[Civ. No. 31592. First Dist., Div. One. Dec. 21, 1972.]

THEODORE KEIL ROUMBANIS, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Victor D. Vertner for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Robert R. Granucci, W. Eric Collins and Nancy S. Reller, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**WEINBERGER, J.**\*—On August 27, 1970, the Santa Clara District Attorney filed a complaint in municipal court charging petitioner with violation of Vehicle Code section 23101 (driving under the influence of liquor with resulting injury to a third person). An amended complaint filed June 3, 1971, charged petitioner with violation of Health and Safety Code section 11500 (possession of a narcotic). On September 28, 1971, the Santa Clara Grand Jury returned an indictment against petitioner charging him with these two violations and also included a charge that at the time of the

---

\*Assigned by the Chairman of the Judicial Council.

other offenses petitioner was in possession of a deadly weapon. The charges in the amended complaint were then dismissed on the motion of the district attorney on September 29, 1971.

Petitioner's motions to suppress evidence on the drunk driving charge pursuant to section 1538.5 of the Penal Code, and to dismiss the drug possession charge based on a denial of due process for failure to afford petitioner a speedy trial were denied by the superior court, but the motion to dismiss the charge of being armed with a deadly weapon was granted.

Petitioner seeks a writ of prohibition and mandamus from this court prohibiting the trial on the possession of cocaine charge, and ordering the evidence of intoxication suppressed.

The facts on which the indictment was returned are as follows: On August 20, 1970, petitioner and a female companion were riding on petitioner's motorcycle. Petitioner was allegedly observed by an officer to proceed through an intersection at an excessive speed, failing to stop and crashing into a chain-link fence. Both he and his companion were seriously injured.

Officer Scribner had observed petitioner's actions and arrived at the accident site and noted an odor of alcohol on petitioner's breath. An Excedrin box was discovered underneath petitioner's hand when petitioner was lifted onto a stretcher. Officer Marty also discovered a knife carried by petitioner.

Petitioner was transported by ambulance to El Camino Hospital. He was conscious and in pain, but received no medication. Petitioner refused to answer any questions and was not advised of his constitutional rights. Officer Scribner asked petitioner if he "would give a blood test" but received no answer. John Steinwinder, a police technician, extracted a blood sample, which later formed the basis of the first complaint.

Petitioner at the time of the accident or at the time in the hospital was not placed under arrest nor had a search warrant or arrest warrant been issued for him. Presumably he was first arrested sometime after August 27, 1970, when the complaint against him was filed in the municipal court.

The first issue to be considered is the propriety of the trial court's ruling on the motion to suppress evidence alleged to have been illegally obtained. Petitioner relies heavily upon *People* v. *Superior Court [Hawkins]* 6 Cal.3d 757 [100 Cal.Rptr. 281, 493 P.2d 1145] in support of his contention that his motion under Penal Code section 1538.5 should have been granted. In that case, decided after the filing of the indictment in the case at

bench, the defendant, accompanied by his sister, was driving a pickup truck along a road in Kern County. Without stopping or slowing down at a stop sign, defendant drove his truck into the intersection and collided with another vehicle. Defendant's sister was killed and an occupant of the other car was seriously injured.

Officers of the highway patrol arrived at the scene within 10 minutes. They found defendant standing near the station wagon in a dazed condition, eyes bloodshot, shirt off, back and head bloody from injuries. One officer testified that defendant's breath smelled of alcohol and that there were three beer cans in defendant's truck (one empty and two full). Defendant was not given a field sobriety test, instead he was placed in an ambulance and sent to Kern General Hospital for medical attention.

At the hospital, while defendant was awaiting treatment an officer approached him and asked him to consent to a blood-alcohol test for intoxication. Defendant apparently agreed and signed a written consent which the trial court found was not free and voluntary. A blood sample was taken in a medically approved manner. At no time was defendant placed under arrest. The blood test showed a level of intoxication and several weeks later a complaint was filed charging defendant with various felonies. The California Supreme Court in *Hawkins* found that the taking of a blood sample in a medically approved manner but without the consent of the subject was violative of his right to be secure from unreasonable searches and seizures, where there is probable cause to arrest at the time the sample is taken, but the taking of the sample is not pursuant to a search warrant or incident to an arrest.

The factual situations in *Hawkins* and petitioner's case are essentially the same and, as the trial court in petitioner's case noted, should *Hawkins* be applied retroactively it would control the instant case and "would require the granting of defendant's motion."

■ The retroactivity of a particular decision is to be based on the "prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." (*Linkletter* v. *Walker,* 381 U.S. 618, 629 [14 L.Ed.2d 601, 608, 85 S.Ct. 1731].)

■ The criteria used to resolve a retroactivity question were established in *Stovall* v. *Denno,* 388 U.S. 293, 297 [18 L.Ed.2d 1199, 1203, 87 S.Ct. 1967]: "The criteria guiding resolution of [this] question implicates (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."

However, these criteria should be applied in the situation where the court's decision does in fact establish "new" standards. As in *Mozzetti* v. *Superior Court,* 4 Cal.3d 699 [94 Cal.Rptr. 412, 484 P.2d 84], where the Supreme Court overruled a number of Court of Appeal decisions, but where the basic decision restated old principles, the *Stovall* criteria did not come into play. (See *Gallik* v. *Superior Court,* 5 Cal.3d 855, 860, fn. 4 [97 Cal.Rptr. 693, 489 P.2d 573]: "Accordingly the *Mozzetti* rule, like *Kiefer,* does not represent a substantial change in the law and hence is not merely prospective in effect.")

Contrary to respondent's contention that "the state of the law prior to *Hawkins* was completely contrary to the *Hawkins* rule" and that the police reasonably relied upon the non-*Hawkins* rule, the *Hawkins* opinion indicates that no new rule was established.

█ The conduct which the police employed in petitioner's case has been proscribed since the decisions of *Schmerber* v. *California* (1966) 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826] and *People* v. *Duroncelay,* 48 Cal.2d 766 [312 P.2d 690], as interpreted in *Hawkins.* As was said on page 762 of *Hawkins*: "Similarly in *Duroncelay,* we made it perfectly clear that the seizure of the blood sample could only be justified as 'incident to the lawful arrest of one who is reasonably believed to have violated section 501 of the Vehicle Code.' "

In light of the *Hawkins* decision and the failure of the state to meet its burden of justifying the taking of a blood sample from petitioner and in view of the district attorney's stipulation that petitioner did not freely and voluntarily consent to the taking of his blood, it follows that the trial court should have suppressed the results of the blood alcohol test as having been obtained by an unlawful search and seizure.

█ On the second issue petitioner claims that the police were aware that the substance allegedly found near the petitioner on August 20, 1970, was cocaine. The complaint was filed on August 27, 1970, but omitted to charge petitioner with possession of a narcotic until June 2, 1971. Petitioner alleges that on June 5, 1971, Donald Ragghanttis (a possible defense witness) died, and also that the delay caused a possible loss of fingerprint evidence.

Respondent maintains that petitioner's legal contention that he has been deprived of due process and unduly prejudiced by the delay is without merit based upon the United States Supreme Court decision of *United States* v. *Marion* (1971) 404 U.S. 307 [30 L.Ed.2d 468, 92 S.Ct. 455].

In *Marion* the appellees claimed that the government had known of the

crimes with which they were charged, the circumstances of the crimes, and appellees' identities for over three years before they were indicted. Appellees moved to dismiss on the ground that the indictment was returned "an unreasonably oppressive and unjustifiable time after the alleged offenses," and that the delay deprived them of rights to due process of law and a speedy trial as secured by the Fifth and Sixth Amendments. Appellees asserted no specific prejudice other than that the indictment required memory of many specific acts and conversations occurring several years before and that the delay was due to negligence on the part of the government.

The Supreme Court found that the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an "accused," an event that occurred in *Marion* when the defendants were indicted. "On its (the Sixth Amendment's) face, the protection of the Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution. These provisions would seem to afford no protection to those not yet accused, nor would they seem to require the Government to discover, investigate, and accuse any person within any particular period of time. The Amendment would appear to guarantee to a criminal defendant that the Government will move with the dispatch which is appropriate to assure him an early and proper disposition of the charges against him. '[T]he essential ingredient is orderly expedition and not mere speed.' *Smith v. United States,* 360 U.S. 1, 10 . . . (1959)." (*United States v. Marion,* at p. 313 [30 L.Ed.2d at p. 474].) The court in *Marion* indicated that where there is a lapse of time between the indictment or filing of an information and the knowledge of the crime plus a showing of actual prejudice because of the delay then violation of the Sixth Amendment's guarantee of due process may result. (See *Marion* at pp. 315-316, fn. 7 [30 L.Ed.2d at p. 475].)

California has applied this rule in *Jones v. Superior Court,* 3 Cal.3d 734 [91 Cal.Rptr. 578, 478 P.2d 10], where the Supreme Court ordered the dismissal of a narcotics charge against an accused against whom a complaint was filed and a warrant of arrest issued, but the police made no attempt to serve the warrant until about 19 months after issuance. The court found clear prejudice in the long prearrest delay noting, "The most obvious prejudicial effect of the long prearrest delay was to seriously impair his [petitioner's] ability to recall and secure evidence of his activities at the time of the events in question." (P. 740.) In *Jones* the charge was that the defendant had bought heroin from an undercover agent on a specific date so his memory as to his activities on that date could have been crucial to his defense. No such prejudice exists in the instant case.

The Supreme Court in *Jones* referred to *People v. Wright,* 2 Cal.App.3d

732 [82 Cal.Rptr. 859], where no prejudice was found from a justified five-month prearrest delay, and the trial court's order granting the defendant's motion to set aside the information was reversed. That case, said the court, was distinguishable from the situation in *Jones*.

The case at bench is also distinguishable. The trial court here was well aware that a showing of prejudice to the defendant would require a dismissal of the second count of the indictment and therefore, in the order denying the motion to dismiss, the matter of prejudice was fully covered, as follows:

"The Court is of the opinion that the delay in charging the defendant for a period of approximately nine months for the offense set forth in Count 2 was not an unreasonable delay under the totality of the circumstances revealed by the record and the testimony given in this matter. The delay was explained by the prosecutor as being the direct result of the serious incapacitating injuries sustained by defendant which prevented his appearance in court until May 17, 1971. By defense counsel's own admission as stated before the magistrate on June 3, 1971, he was made aware of the additional charge to be made against his client approximately one week after the defendant had appeared in court for his arraignment on the original charge on May 17, 1971, and defense counsel stated to the Court 'I have to admit [there has been] no real prejudice or harm done other than the fact, when I took the case it was without this serious charge being added'. In view of the testimony given by Officer Scribner relative to his efforts to obtain fingerprints from the tin can in question and the dubious nature of any assistance the defendant might have been able to obtain from the alleged witness Ragghanttis, the Court is of the opinion that defendant has failed to show any prejudice befalling him as a result of the delay. Under the circumstances established by the evidence as to the discovery of the tin box and the location of defendant's passenger at the time of the accident, it would be asking virtually the impossible to have the trier of the fact believe any testimony of this alleged witness who defense counsel asserts would testify that he gave the cocaine to the passenger and, therefore, the defendant did not have responsible possession thereof. Moreover, because of the physical condition of the defendant, it is clear from the record that the trial of this case would not have occurred before the death of this alleged witness and this person would not have been available to assist defendant as a witness at the trial. No one could have foreseen his demise and his testimony would not have been recorded or preserved prior to his death and prior to the trial in any event."

Except for the speculation as to whether or not a trier of fact would have

believed the witness Ragghanttis, the reasons set out in the above quotation from the trial court's order find support in the record.

In *Kaikas* v. *Superior Court,* 19 Cal.App.3d 86 [95 Cal.Rptr. 596], it was held that under the facts and circumstances there presented a delay of 12 months between filing of charges and arrest was not so unreasonable as to amount to a denial of the defendant's right to a speedy trial. Whether or not a delay is unreasonable depends upon the particular facts of the case (*Rost* v. *Municipal Court,* 184 Cal.App.2d 507, 513 [7 Cal.Rptr. 869, 85 A.L.R.2d 974]), and accordingly we find no reason to disturb the trial court's finding that in this case the delay was neither unreasonable nor prejudicial.

Let a peremptory writ of mandate issue suppressing the evidence of the alcoholic content of blood illegally obtained and all testimony relating thereto. To the extent the petitioner seeks additional relief, the petition is denied and the alternative writ is discharged insofar as it relates thereto.

Molinari, P. J., and Elkington, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied February 14, 1973.