336 So.2d 586 (1976)
Jack W. FILMON, Appellant,
v.
STATE of Florida, Appellee.
No. 47369.
Supreme Court of Florida.
June 23, 1976.
Rehearing Denied September 24, 1976.
*587 David A. Demers, Law Offices of Robert W. Pope, St. Petersburg, for appellant.
Robert L. Shevin, Atty. Gen., and Davis G. Anderson, Jr., Asst. Atty. Gen., for appellee.
SUNDBERG, Justice.
This is an appeal from a conviction of manslaughter by culpable negligence in the Circuit Court of the Sixth Judicial Circuit, in and for Pinellas County. Our jurisdiction vests under Article V, Section 3(b)(1), Florida Constitution, because the trial court passed upon the validity of Section 322.261, Florida Statutes, relative to blood alcohol tests for intoxication.
On the evening of August 31, 1973, the automobile driven by appellant Filmon collided with another vehicle at the intersection of 54th Avenue and 34th Street South, in the City of St. Petersburg, Florida. Filmon's car had been heading north on 34th *588 Street South while the other automobile had been going south on the same street and was attempting to make a left turn at the intersection of 54th Avenue South at the time of the collision. Subsequent to the accident six injured persons  four in Filmon's car and two in the other vehicle  were dispatched by ambulance to the Bayfront Medical Center in St. Petersburg. A police officer who had learned of the accident over his car radio proceeded to the hospital and caused blood alcohol tests to be administered to five individuals, the sixth (a passenger in the car which had been attempting a left turn) having died previous to arrival at the hospital. Later that night, the other occupant of the car struck by appellant's auto also died as a result of injuries received in the accident.
At trial there was conflicting evidence adduced as to appellant's drinking prior to the collision and as to the speed of his car shortly before the accident. Testimony as to the former issue ranged from "one or two beers" to an admission that the four people in his car had completed nearly an entire case of beer. At the hospital, the defendant's blood alcohol level was tested at .165%. (The deceased driver had a blood alcohol level of .105%.) Taking the evidence most favorable to the State (as we must do for our purposes here), appellant was traveling between 70 and 90 miles per hour into a controlled intersection in a metropolitan area where the speed limit in the locality of the accident was 55 miles per hour. Traffic at the time and in the vicinity of the accident was described as "fairly heavy". There was no evidence of bad weather or other hazardous road conditions. Although there was conflicting evidence on the point, a witness for the State testified that preceding the accident Filmon had driven erratically, changing lanes frequently and abruptly; that in the process of lane changes he had pulled behind a series of automobiles, applying his brakes sharply. The accident occurred at approximately 8:00 p.m. and darkness had fallen to such a degree that motorists were driving with their headlights illuminated. Although there is also a conflict on this point, viewed in a light most favorable to the State the evidence is that Filmon had an amber or orange light as he proceeded into the intersection where the accident occurred.
Appellant was charged in two Informations with the deaths of the occupants of the automobile struck by the automobile driven by him. Each Information contained two counts  (i) causing the death of another by operating a motor vehicle with culpable negligence in violation of Section 782.07, Florida Statutes, and (ii) causing the death of another through the operation of a motor vehicle while intoxicated in violation of Subsection 860.01(2), Florida Statutes. Appellant moved to suppress several items of evidence including, inter alia, the results of the blood alcohol test performed on him at the hospital by personnel enumerated in Subsection 322.261(1), Florida Statutes 1973.
At the hearing before the trial judge the following facts were stipulated: (1) Mr. Filmon had not been arrested at the time the blood was drawn; (2) no consent was obtained from him to secure the blood sample; (3) a blood sample was taken from everyone involved in the accident; (4) no search warrant was obtained to take the blood of anyone involved in the accident; (5) the appellant was never cited for driving while intoxicated; (6) the officer who directed that the blood be drawn from the people was not present at the scene of the accident; (7) the blood test was taken about an hour after the accident; (8) there were three people other than the appellant in the vehicle at the time of the collision. In addition to these stipulations, testimony was elicited from the officer who directed that the sample be taken. He stated that no one ever attempted to secure a sample for purposes of alcohol analysis through any method other than extraction of blood. Mr. Filmon was also conscious, he had to be physically restrained, he smelled of alcohol at the hospital, and he was belligerent with the nurses. The officer also stated that he did not know who was driving the vehicle *589 at the time that he ordered that the blood test be performed.
Based on the foregoing stipulations and evidence, the court denied appellant's motion and held that the procedure utilized to secure the blood test did not deny appellant equal protection of the law as secured by the Constitution of the United States and the Constitution of the State of Florida.
The State introduced in evidence at trial the results of the blood alcohol test; however, no testimony was introduced relating those results to any degree of intoxication. The court, therefore, directed a verdict as to the second count of each Information. The court denied a requested directed verdict on the first count of each Information. Appellant was convicted by the jury of the crime charged in the first count of each Information.
Apart from the constitutional question which vests this Court with jurisdiction, appellant raises two other points which merit our consideration, i.e., that the evidence was insufficient as a matter of law to support a finding of guilt of culpable negligence and that the trial court erred in refusing to give appellant's requested jury instruction relating to execution of a left turn as prescribed by Section 316.122, Florida Statutes.
Concerning the sufficiency of the evidence, appellant asserts the proposition enunciated in Russ v. State, 140 Fla. 217, 191 So. 296 (1939), that excessive speed alone is not sufficient to support a conviction under the manslaughter by culpable negligence statute. It should be noted that in the Russ case, supra, there was no evidence of consumption of alcohol by the defendant. This question concerning the evidence necessary to sustain a conviction under Section 782.07, Florida Statutes, and its predecessors, has been considered by this Court and the District Courts of Appeal of Florida on numerous occasions. Different results have obtained depending on the facts of each particular case. See Cannon v. State, 91 Fla. 214, 107 So. 360 (1926); Preston v. State, 56 So.2d 543 (Fla. 1952); Smith v. State, 65 So.2d 303 (Fla. 1953); Miller v. State, 75 So.2d 312 (Fla. 1954); Hunt v. State, 87 So.2d 584 (Fla. 1956); Johnson v. State, 92 So.2d 651 (Fla. 1957); and Jackson v. State, 100 So.2d 839 (Fla. App.1st, 1958).
The recent case of Peel v. State, 291 So.2d 226 (Fla.App.1st, 1974), is relied upon heavily by appellant to support his assertion that the evidence in the case at bar was insufficient to support the convictions. Briefly stated, the facts in the Peel case disclose that the defendant was traveling at 40 to 50 miles per hour as he approached an intersection controlled by a stop sign; he did not stop or slow down upon entering the intersection; and as he made a right turn at the intersection he collided with the decedents' car which was traveling on the intersecting road at right angles to the defendant. Although there was evidence that the defendant in the Peel case had been consuming alcohol there was no evidence in the record that he was exceeding the speed limit. The District Court of Appeal concluded that the conduct of the defendant did not constitute that high degree of negligence required for conviction of manslaughter and, relying upon Preston v. State, supra, determined that the additional factor of evidence of intoxication on the part of the defendant was not sufficient to convert the defendant's conduct into the category of culpable negligence. As in the case at bar, the defendant in the Peel case was charged with two intoxication counts as well as two culpable negligence counts, but he was acquitted by the jury on the two intoxication counts.
A clear statement of the conduct necessary to constitute culpable negligence under the statute is enunciated by Mr. Justice Drew in Miller v. State, supra, at 313, 314, where it is stated:
"The culpable conduct necessary to sustain proof of manslaughter under Section 782.07, supra, `must be of "a gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, *590 or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them."'"
However, in applying the foregoing standard every case of manslaughter by culpable negligence must be determined upon the facts and circumstance peculiar to that case. Scarborough v. State, 188 So.2d 877 (Fla.App.2nd, 1966). It cannot be controverted that Russ v. State, supra, and its progeny, cited heretofore and concluding with Peel v. State, supra, stand for the proposition that excessive speed alone, or, in the case of Peel, running a stop sign at an intersection, coupled with evidence of intoxication, is not sufficient to constitute culpable negligence under our criminal statute. However, are we presented in the case at bar merely with evidence of speed and intoxication? An examination of the evidence in a light most favorable to the State discloses that the appellant:
(1) operated his vehicle into the intersection at a speed of from 70 to 90 miles per hour;
(2) did not reduce his speed as he entered the intersection located in a metropolitan area;
(3) entered the intersection at the time the traffic light was amber or orange for traffic proceeding in the direction in which he was proceeding;
(4) alternately changed from one lane of traffic to another, stopping abruptly to the rear of other vehicles as he changed lanes while approaching the intersection; and
(5) took these actions during that time of day when darkness was falling, with consequent impairment of visibility.
Coupled with the foregoing conduct, the jury had before it evidence that the appellant had imbibed significantly immediately preceding the tragic incident. Although the trial court ruled that the evidence was not sufficient to support the charge that appellant was intoxicated for purposes of conviction under Subsection 860.01(2), Florida Statutes, (presumably because the test result was not related to any degree of intoxication), it could be considered by the jury along with the above-stated acts of negligence. It is properly to be considered not as a circumstance which renders acts wanton and reckless which are not otherwise so, but upon the theory that persons under the influence of alcohol to any considerable degree, though not actually intoxicated, are more apt to be heedless, reckless, and daring than when free from such influence. See Smith v. State and Jackson v. State, supra. The totality of the circumstances surrounding the incident, we believe, was sufficient to take the case to the jury for application by it of the standard enunciated in Miller v. State, supra, to such circumstances.
Appellant next asserts the unconstitutionality of Subsection 322.261(1), Florida Statutes 1973. His assault is twofold: (i) It violates the Fourth Amendment because it does not require arrest prior to administration of the blood alcohol test; and (ii) it violates the equal protection clauses of the Federal and State Constitutions by treating unconscious persons differently from conscious individuals, who have the option of withholding their consent to administration of the test. Thus it is argued that the statute authorizes both discriminatory enforcement of statutory penalties and unreasonable searches and seizures.
In State v. Mitchell, 245 So.2d 618 (Fla. 1971), this Court held squarely that a prior arrest was not a constitutional prerequisite of taking a blood alcohol sample. Authority for this proposition was found in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Mitchell also alluded to the equal protection issue in the following manner:
"We are of the opinion that the Legislature foresaw the difficulty and inutility of attempting to arrest an unconscious *591 person or one in shock or on the operating table of a hospital. (Footnote omitted) It should be pointed out that the blood test, as provided for use in these particular situations, can exonerate the person tested. It will often be to the benefit of the unconscious or otherwise incapacitated person to be tested as soon after the accident as possible."
On facts similar to those found in the case at bar, Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957), expressly approved the withdrawal of blood without conscious consent from an automobile accident victim later charged with involuntary manslaughter. It was contended on behalf of petitioner in that case that this procedure violated Fourth and Fifth Amendment protections guaranteed against state action by the Fourteenth Amendment. We believe the relevant portion of Breithaupt still to be controlling.
Appellant contends that the holding in Schmerber, supra, was clarified in U.S. v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), to require a lawful arrest as a condition precedent to administration of a blood alcohol test. We conclude that Dionisio is ambiguous in this regard and reject appellant's interpretation of that case. Accordingly, we reaffirm our holding in Mitchell, supra, that Subsection 322.261(1), Florida Statutes 1973, does not violate the Fourth Amendment to the Constitution of the United States and hold, additionally, that it does not violate the Equal Protection clauses of the Federal and Florida Constitutions. We are supported in this view by a recent decision of the Supreme Court of New Mexico. See State v. Trujillo, 85 N.M. 208, 510 P.2d 1079 (1973).
We reject appellant's assertion that the conduct of the police officer at the hospital where the five remaining accident victims were present constituted a dragnet technique because he had all five tested. The officer had reasonable cause to believe that one or more of that limited group of five individuals had been driving a motor vehicle within the state while under the influence of alcoholic beverages.
The remaining point for our consideration involves refusal of the trial court to instruct the jury concerning the provisions of Section 316.122, Florida Statutes, dealing with execution of a left turn by a motorist. Appellant submits that the trial judge erred in failing to give the requested instruction on the premise that the jury should have considered the conduct of the driver of the vehicle in which the decedents were riding as bearing upon proximate causation. Essentially, his argument is that with the aid of such instruction the jury could have concluded that appellant's conduct was not the proximate cause of the decedents' deaths. The error in appellant's argument is that the conduct of the decedents or the decedents' driver could only be controlling if it were the sole proximate cause of the accident. This is borne out in the Peel case, supra, wherein it was held to be error for the trial judge to refuse to give a tendered instruction on Section 317.301(1)(b), Florida Statutes, which provides that no vehicle shall be driven to the left side of the roadway when approaching within 100 feet of or traversing any intersection. As pointed out by the court, the instruction should have been given in that case because, had the jury believed that the defendant had stopped before entering the intersection and then turned right but found decedents' automobile in the south lane of the thoroughfare into which he was turning, there would have been no negligence on the part of the defendant, and the sole cause of the accident would have been the decedents' negligence in running through the intersection on the wrong side of the road. In the instant case, there is no view of the evidence upon which the jury could have reasonably concluded that the decedents' asserted act of failing to yield the right-of-way was the sole proximate cause of the accident. Appellant's additional contention that the conduct of the decedent somehow bears upon the wantonness or recklessness of his acts is not persuasive. The acts of the decedent can neither add to nor detract from the quality of appellant's conduct. Consequently, we find no error in *592 the trial court's failure to grant the requested instructions.
The judgments of conviction are affirmed.
ROBERTS, Acting C.J., and BOYD and ENGLAND, JJ., concur.
HATCHETT, J., dissents with an opinion.
ADKINS, J., dissents and concurs with HATCHETT, J.
HATCHETT, Justice (dissenting).
I respectfully dissent from the affirmance of the judgment of conviction on account of the admission into evidence at trial, over objection, of the results of a test performed on blood extracted from appellant at the hospital. The blood sample was obtained in violation of the Fourth Amendment to the United States Constitution, in my opinion, and all evidence derived from it should have been excluded.[1]
The search and seizure question is properly before us. Defense counsel filed a motion to suppress the blood test results, pursuant to Rule 3.190(h), RCrP, and subsequently expanded the statement of reasons for suppression in an amended motion to suppress. On the day of trial, but before trial began, these motions were heard. No longer is there any question that blood testing procedures of the kind employed in the present case "plainly constitute searches of `persons,' and depend antecedently upon seizures of `persons,' within the meaning of [the Fourth] Amendment." Schmerber v. California, 384 U.S. 757, 768, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908, 918 (1966).
No warrant authorized extraction of blood from appellant's veins. Since the decisions in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) and Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), the States have been obliged "to follow all the ins and outs" Coolidge v. New Hampshire, 403 U.S. 443, 490, 91 S.Ct. 2022, 2050, 29 L.Ed.2d 564, 597 (1971) (Harlan, J., concurring) of the United States Supreme Court's Fourth Amendment cases. With a few well-recognized exceptions, which have been "jealously and carefully drawn," Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514, 1519 (1958), the "most basic constitutional rule in this area," Coolidge v. New Hampshire, 403 U.S. at 454, 91 S.Ct. at 2032, 29 L.Ed.2d at 576, is the warrant requirement, which has both procedural and substantive aspects. Absent prior judicial authorization for searches and seizures, law enforcement officers must be able to justify their conduct after the fact, in order to render its fruits admissible at trial, over objection. Because the policeman who ordered the extraction of appellant's blood did not act pursuant to judicial warrant, the prosecution had the burden to show at the suppression hearing that the challenged evidence had been obtained lawfully.
All an accused need do is make an "initial showing," State v. Lyons, 293 So.2d 391, 393 (Fla.App.2nd, 1974) of standing to challenge the legality of a search, and the "ultimate burden of proof as to the validity of a warrantless search is on the State." Mann v. State, 292 So.2d 432, 433 (Fla.App.2nd, 1974). Where the prosecution proposes to introduce evidence extracted from the body of the accused, in order to prove its case, the accused necessarily has standing to raise the question of the legality of the extraction. Schmerber v. California, supra; Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957); State v. Mitchell, 245 So.2d 618 (Fla. 1971); Wilson *593 v. State, 225 So.2d 321 (Fla. 1969). See generally Note, Constitutional Limitations on the Taking of Body Evidence, 78 Yale L.J. 1074 (1969). Here, the parties stipulated that no warrant authorized the seizure of the blood which was taken from appellant Filmon, among other persons, at the direction of a policeman.
In keeping with these principles, the prosecution undertook to prove facts at the suppression hearing to justify the warrantless search and seizure in the present case. The majority has set forth the various stipulations entered into at the suppression hearing, and has summarized the evidence adduced there. Ante, pp. 588-589. Officer Gates, the only witness produced by the State, testified that he had not been at the accident scene, but heard about the collision over the radio and drove to the hospital emergency room, where he was evidently the only policeman present when the ambulances arrived. Officer Gates' testimony also establishes that appellant was "conscious ... had to be physically restrained ... smelled of alcohol . . and... was belligerent," ante, p. 588, when blood was taken from him at Officer Gates' direction. In short, the State adequately demonstrated a reasonable basis on which to believe that the appellant had been drinking. Responding to questions from the prosecutor, Officer Gates further testified:
Q Did you authorize any other blood samples to be taken?
A Yes. I had blood samples taken of all the victims who were still living at the time.
Q Is there any reason that you had all these blood samples at that time and that place?
A Yes, there is. It was my contention that due to the seriousness of the accident, the investigating officer would not be able to arrive at the hospital for unknown number of hours after the victims arrived.
There was no evidence that Officer Gates made any effort to determine who had been driving before he ordered the blood samples taken. Testimony at trial showed that Walter Gibson, one of the other accident victims from whom blood was taken, died later the same night. At the suppression hearing, the total number of accident victims was not alluded to. The majority relies principally on Breithaupt v. Abram, supra,[2] and State v. Mitchell, supra,[3] in upholding *594 the denial of the motion to suppress. I subscribe to the proposition articulated in State v. Clyde, 299 So.2d 136 (Fla. App.2nd, 1974) that "an affirmance of the ruling of the trial court is appropriate if the trial judge's ruling", at 137, can be sustained on any basis consistent with the evidence adduced,[4] but I believe the State has failed to prove facts that can justify a warrantless search in the present case, on any theory.
Aside from the procedural consequences of a search without warrant, there is a substantive warrant requirement which stands as an absolute bar to the use of evidence taken in certain warrantless searches. Warrants are generally necessary for searches of private dwellings both as a matter of Florida law, see Fla. Stat. § 933.18 (1975), Cooper v. State, 106 Fla. 254, 143 So. 217 (1932); Pesce v. State, 288 So.2d 264 (Fla.App.4th, 1974); Gelis v. State, 249 So.2d 509 (Fla.App.2nd, 1971); Panzavecchia v. State, 201 So.2d 762 (Fla. App.3rd, 1967), and as a federal constitutional matter. Coolidge v. New Hampshire, supra; Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); Shipley v. California, 395 U.S. 818, 89 S.Ct. 2053, 23 L.Ed.2d 732 (1969); Stoner v. California, 376 U.S. 483, 486, 84 S.Ct. 889, 891, 11 L.Ed.2d 856, 859 (1964). Clearly "no less could be required where intrusions into the human body are concerned."[5]Schmerber v. California, 384 U.S. at 770, 86 S.Ct. at 1835, 16 L.Ed.2d at 919. The exceptions to the requirement, that searches of persons and dwellings be judicially authorized beforehand, fall under four general headings: (1) stop and frisk searches, (2) consensual searches, (3) searches incident to a lawful arrest, and (4) searches where probable cause to search is coupled with exigent circumstances. Just as the fact that a search involves an intrusion into an individual's body, instead of merely into his home, gives no occasion for weakening the warrant requirement, so, too, this is no occasion for strengthening the exceptions to the general rule.
The extraction of blood from appellant for chemical analysis was clearly not a "stop and frisk" and nobody suggests otherwise. The State does not seek to justify taking blood from appellant on the basis of his consent, express or implied. The prosecutor stipulated, at the suppression hearing, "that no consent was obtained from the defendant to secure the blood sample."
*595 Nor has the State sought to avail itself of the exception for searches incident to lawful arrest. The prosecutor stipulated that no arrest was effected. In the great majority of states, inquiry would end here because the lack of a formal arrest renders inadmissible at trial any blood test results based on blood taken from a citizen who has not given consent. E.g., People v. Superior Court, 6 Cal.3d 757, 100 Cal. Rptr. 281, 493 P.2d 1145 (1972) (taking of a blood sample in a medically approved manner but without consent of the subject violative of right to be secure from unreasonable searches and seizures where there is probable cause to arrest but the taking of the sample is not pursuant to search warrant or incident to lawful arrest); Roumbanis v. Superior Court, 29 Cal. App.3d 542, 105 Cal. Rptr. 702 (1st Dist. 1972) (reh. den. 1973); State v. Towry, 26 Conn.Sup. 35, 210 A.2d 455 (1965); State v. Brunner, 211 Kan. 596, 507 P.2d 233 (1973); State v. Baker, 184 Neb. 724, 171 N.W.2d 798 (1969); State v. Richerson, 87 N.M. 437, 535 P.2d 644 (Ct.App.) cert. den. 87 N.M. 450, 535 P.2d 657 (1975) (taking blood sample violated Fourth Amendment and New Mexico constitution where subject had not been arrested); People v. Butor, 75 Misc.2d 558, 348 N.Y.S.2d 89 (Dutchess Cty. 1973); People v. Young, supra; Commonwealth v. Murray, 441 Pa. 22, 271 A.2d 500 (1970) (blood test on injured driver suppressed "[a]lthough the altruistic motives of the arresting officer in delaying the arrest are to be admired"); Commonwealth v. Wolpert, 224 Pa.Super. 361, 308 A.2d 120 (1973); Holland v. Parker, 354 F. Supp. 196 (D.S.D. 1973) (three judge district court declared South Dakota law unconstitutional for want of requirement that lawful arrest precede nonconsensual extraction of blood); State v. Cruz, 21 Utah 2d 406, 446 P.2d 307 (1968); State v. Ball, 123 Vt. 26, 179 A.2d 466 (1962); State v. Wetherell, 82 Wash.2d 865, 514 P.2d 1069 (1973); State v. Kroening, 274 Wis. 266, 79 N.W.2d 810 (1956) reh. den. (1957) (decision grounded on state constitutional prohibition against unreasonable searches and seizures). Some decisions requiring that extraction of blood be incident to lawful arrest rest solely on pertinent statutory provisions, e.g. State v. Cruz, supra, and others are based squarely on the Fourth Amendment as made applicable to the States by the Fourteenth Amendment. E.g., People v. Superior Court, supra; People v. Young, supra; Commonwealth v. Murray, supra.
In still other cases, decision is grounded alternatively on the statute involved and on the Fourth Amendment. In State v. Wetherell, supra, for example, the Supreme Court of Washington said:
Supportive of the statutory arrest requirement, and undoubtedly a reason therefor, is the holding of the United States Supreme Court in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).
* * * * * *
Both before and after Schmerber, other courts reached substantially similar conclusions with respect to the interpretation and application of implied consent statutes. Almost without exception, each court considering the matter held a lawful arrest to be the essential introductory step to implied consent provisions. Results adduced from sobriety tests not preceded by such an arrest or by actual consent were condemned and held to be inadmissible evidence. Schutt v. Macduff, 205 Misc. 43, 127 N.Y.S.2d 116 (1954); Otte v. State, 172 Neb. 110, 108 N.W.2d 737 (1961); State v. Kroening, 274 Wis. 266, 79 N.W.2d 810, 80 N.W.2d 816 (1956); State v. Auger, 124 Vt. 50, 196 A.2d 562 (1963); State v. Towry, 26 Conn.Sup. 35, 210 A.2d 455 (1965); State v. Cruz, 21 Utah 2d 406, 446 P.2d 307 (1968); Opinion of the Justices, 255 A.2d 643 (Me. 1969); Mitchell v. State, 227 So.2d 728 (Fla.App. 1969); Holland v. Parker, 354 F. Supp. 196 (S.D. 1973). 514 P.2d at 1072-73 (footnote omitted).
In Schmerber, the Court said "that the attempt to secure evidence of blood-alcohol content ... was an appropriate incident to [Schmerber's] arrest." 384 U.S. at 771, 86 S.Ct. at 1836, 16 L.Ed.2d at 920. *596 There is also broad agreement among the commentators to the effect that requiring "that the police make a lawful arrest prior to taking the suspect into custody for a blood test should be the minimal constitutional standard under the fourth and fourteenth amendments." Note, Arrest Requirement for Administering Blood Tests, 1971 Duke L.J. 601, 617 (1971); Comment, Florida's "Implied Consent" Statute: Chemical Tests for Intoxicated Drivers, 22 Miami L.Rev. 698, 702 (1968); Comment, Blood Alcohol Tests and the Fourth and Fifth Amendments, 17 Drake L.Rev. 231 (1968).
The majority ignores the great wealth of authority which supports the view that arrest is a necessary precondition to warrantless, nonconsensual extraction of blood. I find the overwhelming agreement of so many courts highly persuasive and I cannot subscribe to the majority view that blood may be extracted from a citizen's veins, not only in the absence of formal arrest but also in the absence even of probable cause for arrest. In the nature of things, taking a blood sample from appellant "depended antecedently upon" a seizure of his person, although there is concededly a difference between formal arrest and investigatory detention. Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973). Cf. Sheff v. State, 329 So.2d 270 (Fla. 1976); Clark v. State, 322 So.2d 635 (Fla.App.3rd, 1975). If the rationale for search incident to arrest has "little applicability with respect to searches involving intrusions beyond the body's surface," Schmerber v. California, 384 U.S. at 769-770, 86 S.Ct. at 1835, 16 L.Ed.2d at 919, cf. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (search incident to arrest should be limited to arrestee's "person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him" 395 U.S. at 768, 89 S.Ct. at 2043, 23 L.Ed.2d at 697), there is still every reason to require probable cause for arrest as a prerequisite for warrantless blood searches.[6]
Because the prosecution stipulated to the absence both of consent and of a lawful arrest, the only conceivable justification for the warrantless seizure in the present case is probable cause to search together with exigent circumstances. Biologically and as a matter of constitutional law, exigent circumstances were present here. The danger that delay necessary to obtain a warrant might occasion the loss of the evidence is quite plain where the evidence is alcohol which the body is constantly eliminating from the bloodstream. Here as in Schmerber "time had to be taken to bring the accused to a hospital and to investigate the scene of the accident [so that] there was no time to seek out a magistrate and secure a warrant." 384 U.S. at 771, 86 S.Ct. at 1836, 16 L.Ed.2d at 920.
Probable cause to search is synonymous with probable cause for arrest, in a case like the present one. Where the evidence sought is alcohol in a driver's blood, probable cause to search means probable cause to believe that a person has been driving while under the influence of alcohol. These are the same elements which give probable cause to arrest for driving while under the influence of alcohol. Similarly, in Schmerber, "the facts which established probable cause to arrest ... also suggested the required relevance and likely success of [i.e., probable cause for] a test of ... blood for alcohol." 384 U.S. at 770, 86 S.Ct. at 1835, 16 L.Ed.2d at 919. Especially after the decision in Cupp v. Murphy, supra, there is room for the view that a blood sample may be taken without consent from a person as to whom there is probable cause for arrest, even in the absence of an arrest. The search and seizure in this case are nonetheless unreasonable.
The prosecution failed to demonstrate probable cause at the suppression hearing, whether for the arrest of appellant or for *597 the search of his veins. His drunkenness was immaterial, unless he was driving. Sears v. State, 319 So.2d 69 (Fla.App.2nd, 1975) The "standards applicable to the factual basis supporting the officer's probablecause assessment at the time of the challenged arrest and search are at least as stringent as the standards applied with respect to the magistrate's assessment," Whiteley v. Warden, 401 U.S. 560, 566, 91 S.Ct. 1031, 1036, 28 L.Ed.2d 306, 312 (1971), when passing on an application for a warrant. The proof offered did not meet those standards. The majority concludes that Officer Gates "had reasonable cause to believe that one or more of that limited group of five individuals had been driving a motor vehicle within the state while under the influence of alcoholic beverages." Ante, p. 591. But this conclusion is not predicated on the evidence adduced at the suppression hearing. The prosecution never put into evidence at the hearing any proof as to how many people were in the cars involved in the accident, or how many injured persons were in the emergency room.
Even if the testimony adduced at trial is considered on this question, as the majority evidently proposes, the search and seizure are not shown to be reasonable. Officer Gates knew, when he directed the blood samples to be taken that "at least one death had resulted from the accident." (R 35) It developed at trial that two automobiles were involved in the collision, and that a second person died later the night of the accident. Since the person who was already dead might have been driving one of the cars, Officer Gates presumably knew, when he directed the extraction of appellant's blood, that the chances that appellant was a driver were no better than two in six. (If any of the occupants of either car had escaped injury, the odds would not have been that good.) In this respect, the present case resembles Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) where three men were arrested for rape on the victim's assertion that one of them was guilty of the crime. Mr. Justice Frankfurter wrote for the Court, 354 U.S. at 456, 77 S.Ct. at 1360, 1 L.Ed.2d at 1484:
Presumably, whomever the police arrest they must arrest on "probable cause." It is not the function of the police to arrest, as it were, at large and to use an interrogating process at police headquarters in order to determine whom they should charge before a committing magistrate on "probable cause."
Against the facts in Mallory, the clear implication of this language is that probable cause to arrest means something more than a one in three (or two in six) chance of success.
But there is no need to invoke any such glib formula in condemning the search and seizure in this case as unreasonable. Officer Gates did not make the slightest effort to ascertain who was driving. Of course, there is no requirement that the officer who investigates the accident scene accompany accident victims to the hospital, but the unthinking, overzealous approach this case exemplifies is inconsistent with the requirement that searches and seizures be reasonable. Cf. State v. Neri, 290 So.2d 500 (Fla.App.2nd, 1974). Courts do not do their duty when they countenance undiscriminating official intrusions into citizens' bodies, in a wholesale fashion. What kept Officer Gates from asking the simple question, "Who was driving?" instead of ordering that blood tests be done en masse on everybody in sight? See People v. Smith, 175 Colo. 212, 486 P.2d 8 (1971) (en banc) (statements taken from four occupants of automobile indicated that the accused was driving and therefore gave probable cause for his arrest).
It is well to keep in mind the words of Mr. Justice Bradley, which have been quoted with approval many times since:
It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to *598 the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.

Boyd v. United States, 116 U.S. 616, 635, 6 S.Ct. 524, 535, 29 L.Ed. 746, 752 (1874).
This case is free from the gross abuses present in Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), but resembles very closely Sears v. State, supra, State v. Neri, supra and Russo v. State, 270 So.2d 428 (Fla.App.4th, 1972).
ADKINS, J., concurs.
NOTES
[1] I agree with the majority that the equal protection claim lacks merit. There is a substantial question whether this appellant has standing to raise it, in any event. He argues that unconscious persons are denied equal protection of the laws because they are conclusively presumed to have consented to blood tests, while persons who are conscious may refuse the tests. But the legal capacity to refuse is very logically related to the physical ability to do so. For another possible "rational basis" for distinguishing between conscious and unconscious persons in this context, see Comment, 79 Harv.L.Rev. 677, 680 (1966). The uncontroverted evidence at the suppression hearing, moreover, was to the effect that appellant Filmon was conscious, when his blood was taken.
[2] The decision in the Breithaupt case antedates Mapp v. Ohio, supra. In deciding Breithaupt, the "Court did not decide whether the extraction of blood ... was unlawful, but rejected the [search and seizure] claim on the basis of Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782." Schmerber v. California, 384 U.S. at 766, 86 S.Ct. 1833, 16 L.Ed.2d at 917. At the time Breithaupt was decided, the exclusionary rule was not applicable to the States, under Wolf v. Colorado, supra. As to appellant Filmon's Fourth Amendment claim, therefore, the Breithaupt case has been implicitly overruled, and is no longer apposite. E.g. People v. Young, 42 Misc.2d 540, 248 N.Y.S.2d 287 (Westchester Cty. 1964) ("If the Breithaupt facts were today to be represented to the Supreme Court, we think it reasonable to anticipate, in the light of Mapp v. Ohio, that the Court would ... [find] an illegal search and seizure" 248 N.Y.S.2d at 297)
[3] As to any point of state law decided in State v. Mitchell, supra, I consider myself bound because "the principle of stare decisis should apply to such recent precedent. Otherwise we would introduce uncertainty, instability and confusion into the law not only on this particular question but generally." State v. Terry, 336 So.2d 65 at 69 (Fla., 1976) (Hatchett, J., concurring). But the supremacy clause of the United States Constitution must be given effect, even when to do so requires the overruling of some decision by this Court as to a point of federal constitutional law. Like the Supreme Court of Kansas, I "would differ with the Florida court's reading of Schmerber [as explicated in State v. Mitchell, supra.]" State v. Brunner, 211 Kan. 596, 507 P.2d 233, 240 (1973).

Since the Mitchell case, the legislature has amended Fla. Stat. § 322.261 (1975) by adopting Fla.Laws, ch. 74-384 § 2, now codified as Fla. Stat. § 322.261(1)(b) (1975). The new subsection treats prearrest breath tests, providing that "a law enforcement officer shall obtain the written consent" of the driver beforehand and even then that the results of such prearrest tests "shall not be admissible into evidence in any civil or criminal proceeding." Fla. Stat. § 322.261(1)(b)(1) (1975). It may be worth noting in passing that the District Courts of Appeal considering the question under Section 322.261, before Mitchell was decided, unanimously held that a lawful arrest was a necessary antecedent to a blood test because otherwise the statute "would probably be held unconstitutional." Shores v. State, 233 So.2d 434, 436 (Fla.App.1st, 1970); Mitchell v. State, 227 So.2d 728 (Fla.App.2nd, 1969). I am compelled to dissent in the present case, however, not on the basis of Fla. Stat. § 322.261 (1975), but for the reason that the unwarranted taking of appellant's blood has not been shown to be reasonable within the meaning of the Fourth Amendment, in my judgment.
[4] When he denied the motion to suppress, the trial judge gave his reasons, as follows:

Now the Court does not feel that the Dionisio case set forth a standard and a guideline that there must be an arrest which is required before the blood may be taken. The Court feels under the circumstances of this case that the taking of the blood was relevant. It was a serious accident with multiple people injured, one  and one who was dead on arrival at the hospital.
From the testimony that has been presented to the court, there was a likely success of a test of the petitioner's blood for alcohol by reason of the officer's testimony that he  two items: Number one, that he smelled it upon him; number two, that he was belligerent with people that were trying to treat him. The Court does not feel that it is reasonable to have supposedly the officer on the scene that can identify the drivers of the respective vehicles accompany those individuals to the hospital in order to have a proper blood alcohol, blood-alcohol test made. That just is not reasonable taking the entire circumstances of these types of incidents.
[5] A similar thought was expressed by the Wisconsin Supreme Court discussing Wisconsin search and seizure provisions in State v. Kroening, 274 Wis. 266, 79 N.W.2d 810, 815 (1956) reh. den. (1957):

It is thoroughly recognized that property on the person is not to be seized by zealous officers who have no search warrant and who have not made a valid arrest. [citation omitted] We do not understand that the constitutional provision in question forbids officers to go through one's pockets but permits them to go through his veins.
[6] Several cases explicitly reject the view that probable cause for arrest will suffice, in the absence of formal arrest. E.g., Roumbanis v. Superior Court, supra; Commonwealth v. Murray, supra; Holland v. Parker, supra.