581 So.2d 1370 (1991)
STATE of Florida, Appellant,
v.
Julian Scaffe McINNIS, et al., Appellees.
No. 90-1137.
District Court of Appeal of Florida, Fifth District.
June 13, 1991.
*1371 Robert A. Butterworth, Atty. Gen., Tallahassee, and David S. Morgan, Asst. Atty. Gen., Daytona Beach, for appellant.
Robert L. McLeod, II, Palatka, for appellee Julian Scaffe McInnis.
James B. Gibson, Public Defender, and Michele A. Lucas, Asst. Public Defender, Daytona Beach, for appellees Burns, Marshall, and Gustafson.
W. SHARP, Judge.
The state appeals from a final order of the county court in and for the Seventh Judicial Circuit which held section 316.193(4) unconstitutional and which certified the following question as being one of great public importance:
Does section 316.193(4) of the Florida Statutes create a constitutionally impermissible class in its application to those defendants similarly situated and thus violate the equal protection clause of the Fourth and Fourteenth Amendment of the United States Constitution and Article One, Section Two of the Florida Constitution; and does the same statute, in its application, impose a cruel or unusual punishment or excessive fine upon those in similar position before the law and thus violate Article I, Section 17 of the Florida Constitution?
We accepted jurisdiction pursuant to Florida Rule of Appellate Procedure 9.030(b)(4)(A). We answer the certified question in the negative.
Four defendants who had each been convicted of driving under the influence[1] (McInnis, Burns, Marshall, and Gustafson) appeared before the county court for sentencing. Each had consented to take a breath test, to determine blood alcohol levels, and each had been found to have a blood alcohol level of.20 or more. Pursuant to section 316.193(4), these defendants should have been sentenced to enhanced penalties[2] which would have exceeded those penalties applicable to motorists convicted under section 316.193(1)(a) who had refused to take the breath test.[3] Accordingly, *1372 the court disregarded the enhanced penalties of section 316.193(4)(a) and sentenced these defendants as first-time DUI offenders pursuant to section 316.193(1).
Initially, the state argues the lower court erred in ruling the statute unconstitutional as applied because the defendants presented no evidence or testimony at the hearing. In re Fuller, 255 So.2d 1 (Fla. 1971); Sims v. State, 510 So.2d 1045 (Fla. 1st DCA 1987). However, from the face of the order appealed, it appears the county court took judicial notice of the fact that some defendants who refuse to take the breath test have readings of .20, and thus they are sentenced, after their convictions, under a less vigorous range of penalties. However, from a common sense perspective, it seems to us that the challenge here is to the statute's operation on its face, not "as applied." The interrelationship of the punishment and consent statutes[4] create the possibility that individuals will be punished differently for the same crime, depending upon whether or not they consent to take the breath test, and measure above one of the statutory levels (.10 or as in this case, .20).

I. Equal Protection Challenge

In order to create an equal protection challenge to a statute the defendants must show there are at least two categories of persons similarly situated, who are being treated differently, without any rational explanation or justification. Where the classification is not a legally suspect one, or one involving a fundamental right, only a rational basis for the different treatment must be shown in order for the statute to pass constitutional muster. State v. Breed, 111 Idaho 497, 725 P.2d 202 (Idaho App. 1986). But the first task is to clearly identify the class under attack.
In this case, there is no clear category of persons who receive disparate treatment. The more severe penalties of section 316.193 are provided for persons convicted of DUI who are given the option to refuse the test, but who agree to take it, and measure above the prohibited levels.[5] But the more severe penalties are also applicable to unconscious motorists, who have no option to refuse,[6] and who are later convicted of DUI. §§ 316.193, 316.1932(1)(c), Fla. Stat. (1989). Similarly, motorists who cause death or severe injury are given no option to refuse the blood test, and if convicted of DUI they also may be sentenced to the more severe range of punishments.
The defendants' real target in this case is Florida's statutory scheme which allows a motorist not to take the blood test, under certain circumstances.[7] Pursuant to Florida's *1373 statutory scheme, a person suspected (with adequate cause) of driving under the influence, can be asked to take a blood alcohol test by the police, pursuant to section 316.1932(1)(c),[8] if he or she is conscious and if no death or great injury is involved in the accident.[9] The police officer must warn the motorist that failure to consent will result in the motorist's license being suspended. The suspension results if a warning is adequately given[10] for all motorists who exercise the statutory option of refusing to take the test, without regard to whether or not they are later convicted of DUI.[11]
This statutory option not to take a blood alcohol test, when there are probable grounds to charge a driver with DUI, is a "grace," and not a "right."[12] The United States Supreme Court has held under these circumstances, there is no fourth, fifth, sixth or fourteenth amendment right not to have a blood test taken by brute force and against a suspect's will. See South Dakota v. Neville, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983); Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); State v. Hoch, 500 So.2d 597 (Fla. 3d DCA 1986), rev. denied, 509 So.2d 1118 (Fla. 1987); Pardo v. State, 429 So.2d 1313 (Fla. 5th DCA 1983). Our Florida Supreme Court has similarly found no state constitutional grounds prohibiting such a forced test.[13]
Assuming, for purpose of argument, there is disparate treatment of two similarly situated classes of motorists convicted of DUI (those driving with blood alcohol levels of .10 or .20 or over), depending on whether or not they refuse the test, is there a rational basis for the different sentences? This lesser standard applies because no fundamental constitutional right is involved, and no "suspect" classification based on race, religion, national origin, or the like, is involved. Breed. If there is a rational legislative policy or purpose for the statutory scheme, it should be upheld. Pennell v. City of San Jose, 485 U.S. 1, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988).
In this case it appears to us that the defendants are attacking Florida's legislative decision to give motorists suspected of DUI the option not to take a blood alcohol test.[14] If all suspected motorists were *1374 forced to take the test, all would be treated the same. But, unless all are required to take the test, they cannot be treated (sentenced) the same, because the more severe sentences require proof that the blood test was taken, and that the defendant rated at the prescribed levels.
One public policy reason for enacting such a statutory scheme is the legislature's decision to extend to some motorists driving in Florida greater protection and rights of privacy than are provided by the state or federal constitutions. Sambrine v. State, 386 So.2d 546 (Fla. 1980). Suspected motorists cannot be forced to give a blood or breath test on demand by the police. This privilege is not accorded to motorists who are unconscious (and who cannot consent), or to motorists who have caused death or severe injury (and who rightly should not be allowed to refuse the test).[15] Perhaps the legislature felt that it did not want this group of motorists to be subjected to brute force testing against their wills.
This legislative scheme appears to rationally discriminate among classes of motorists suspected of DUI, based on their own choice and the severity of the damage they caused. Allowing this group to refuse the test is a question of taste, civility, decorum, and one which has a rational basis in public policy.[16] We do not agree it transgresses any constitutional equal protection limit.
The trial judge concluded also that the challenged statute unfairly discriminated against "cooperative" motorists by punishing them more seriously than those who refused to take the test. To the extent this argument is not duplicative of the Equal Protection Challenge discussed above, we conclude that all motorists suspected of DUI are in fact treated alike under the challenged statute. See Williams v. Newton, 236 So.2d 98 (Fla. 1970). All persons in the same circumstances are given the option of taking or not taking the blood alcohol test. Both choices have difficult, albeit different consequences. But no showing has been made here that these defendants were arbitrarily or unreasonably denied the option of refusing the test.

II. Cruel and Unusual Punishment  Eighth Amendment

The trial court also found in this case that the disparity in punishments and fines for the two potential classes of .20 motorists convicted of DUI was so disproportionate as to violate the Eighth Amendment of the United States Constitution. The punishments involved in this statute vary by small degrees, relatively speaking, and do not rise to the level of gross disparity required for a constitutional challenge on this ground. See Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); Hutto v. Davis, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982). Further, as pointed out above, any disparity in treatment comes about by reason of the defendant's own option or election. That is a circumstance entirely outside the statute. See Adamo v. State, 496 So.2d 252 (Fla. 4th DCA 1986).
Accordingly, we answer the certified question in the negative; we vacate the sentences involved in these cases, and we remand for sentencing pursuant to section 316.193(4), Florida Statutes (1989).
Sentences VACATED; REMANDED for resentencing.
COBB, J., concurs.
GOSHORN, J., concurs specially with opinion.
GOSHORN, Judge, concurring specially.
In my view the appellee in this case attempts to mix apples and oranges. Section *1375 316.1932(1)(e)1 specifies that by applying for, accepting and using a driver's license a person is deemed to have impliedly consented to the other provisions of section 316.1932 authorizing breath, urine or blood testing when that person is lawfully arrested for any offense allegedly committed while driving or in actual physical control of a motor vehicle while under the influence of alcoholic beverages, chemical substances, or controlled substances. A licensee has the privilege of withdrawing his implied consent by refusing to take the test, as long as he is not incapable of refusing to take the test or has not caused an accident involving death or serious bodily injury. §§ 316.1932(1)(c) and 316.1933(1), Fla. Stat. (1989). The legislative "trade-off" for the consent withdrawal privilege is suspension of the licensee's driver's license and the admissibility of the refusal into evidence in a criminal proceeding. § 316.1932(1)(c), Fla. Stat. (1989).
However, none of the foregoing addresses the punishments assessed by section 316.193. Those penalties may be imposed regardless of whether a licensee withdraws his implied consent if the state can prove the necessary statutory elements. In short, an equal protection attack on section 316.193 is unavailing because the statute does not create two categories of persons similarly situated who are nonetheless treated differently.
NOTES
[1] § 316.193(1), Fla. Stat. (1989).
[2] Section 316.193(4), Florida Statutes (1989) provides:

(4) Any person who is convicted of a violation of subsection (1) and who has a blood alcohol level of.20 or above shall be punished:
(a) By a fine of:
1. Not less than $500 or more than $1,000 for a first conviction.
2. Not less than $1,000 or more than $2,000 for a second conviction.
3. Not less than $2,000 or more than $5,000 for a third conviction.
(b) By imprisonment for:
1. Not more than 9 months for a first conviction.
2. Not more than 12 months for a second conviction.
3. Not more than 12 months for a third conviction.
For the purposes of this subsection, only the instant offense is required to be a violation of subsection (1) by a person who has a blood alcohol level of .20 or above.
[3] Section 316.193(1)(a), (2)(a)2 and (2)(b), Florida Statutes (1989) provide:

(1)(a) The person is under the influence of alcoholic beverages, ... when affected to the extent that his normal faculties are impaired... .
* * * * * *
(2)(a)2. By imprisonment for:
a. Not more than 6 months for a first conviction.
b. not more than 9 months for a second conviction.
c. not more than 12 months for a third conviction.
(b) Any person who is convicted of a fourth or susequent violation of subsection (1) is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[4] §§ 316.193, 316.1932, Fla. Stat. (1989).
[5] § 316.193(2) & (4), Fla. Stat. (1989).
[6] § 316.1932(1)(c), Fla. Stat. (1989); Filmon v. State, 336 So.2d 586 (Fla. 1976), cert. denied, 430 U.S. 980, 97 S.Ct. 1675, 52 L.Ed.2d 375 (1977).
[7] Section 316.1932(1)(a), Florida Statutes (1989) provides:

(1)(a) Any person who accepts the privilege extended by the laws of this state of operating a motor vehicle within this state shall, by so operating such vehicle, be deemed to have given his consent to submit to an approved chemical test or physical test including but not limited to an infrared light test of his breath for the purpose of determining the alcoholic content of his blood, and to a urine test for the purpose of detecting the presence of chemical substances as set forth in s. 877.111 or controlled substances, if he is lawfully arrested for any offense allegedly committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic beverages, chemical substances, or controlled substances. The chemical or physical breath test shall be incidental to a lawful arrest and administered at the request of a law enforcement officer who has reasonable cause to believe such person was driving or was in actual physical control of the motor vehicle within this state while under the influence of alcoholic beverages. The urine test shall be incidental to a lawful arrest and administered at a detention facility or any other facility, mobile or otherwise, which is equipped to administer such tests at the request of a law enforcement officer who has reasonable cause to believe such person was driving or was in actual physical control of a motor vehicle within this state while under the influence of controlled substances. The urine test shall be administered at a detention facility or any other facility, mobile or otherwise, which is equipped to administer such tests in a reasonable manner that will ensure the accuracy of the specimen and maintain the privacy of the individual involved. The administration of one type of test shall not preclude the administration of another type of test. Such person shall be told that his failure to submit to any lawful test of his breath or urine, or both, will result in the suspension of his privilege to operate a motor vehicle for a period of 1 year for a first refusal, or for a period of 18 months if the driving privilege of such person has been previously suspended as a result of a refusal to submit to such a test or tests. The refusal to submit to a chemical or physical breath test or to a urine test upon the request of a law enforcement officer as provided in this section shall be admissible into evidence in any criminal proceeding.
[8] Section 316.1932(1)(c), Florida Statutes (1989) provides:

Any person whose consent is implied as provided in this section shall be deemed to have consented to an approved blood test for the purpose of determining the alcoholic content of the blood... . Any person who is incapable of refusal by reason of unconsciousness ... shall be deemed not to have withdrawn his consent to such a test... .
[9] Section 316.1933(1), Florida Statutes (1989) provides:

(1) Notwithstanding any recognized ability to refuse to submit to the tests provided in s. 316.1932 or any recognized power to revoke the implied consent to such tests, if a law enforcement officer has probable cause to believe that a motor vehicle driven by or in the actual physical control of a person under the influence of alcoholic beverages, any chemical substances, or any controlled substances has caused the death or serious bodily injury of a human being, such person shall submit, upon the request of a law enforcement officer, to a test of his blood for the purpose of determining the alcoholic content thereof... .
[10] State Department of Highway Safety and Motor Vehicles v. Bell, 505 So.2d 472 (Fla. 2d DCA 1987).
[11] § 316.1932(1), Fla. Stat. (1989).
[12] State v. Young, 483 So.2d 31 (Fla. 5th DCA 1985), rev. dismissed Craft v. State, 517 So.2d 691 (Fla. 1988).
[13] State v. Bender, 382 So.2d 697 (Fla. 1980); § 316.1932, Fla. Stat. (1989).
[14] This option, however, is not without consequences. Motorists automatically have their driver's licenses suspended for six months to one year (for a second refusal). See §§ 316.1932, 322.261, Fla. Stat. (1989). If later convicted of DUI, the more severe sentences will not be applicable to them but their refusal to take the test may be used against them in the criminal trial.
[15] §§ 316.1932(1)(c), 316.1933, Fla. Stat. (1989).
[16] See Commonwealth v. Hill, 379 Pa.Super. 34, 549 A.2d 583 (Pa.Super. 1988), appeal denied, 521 Pa. 618, 557 A.2d 721 (Pa. 1989).