591 So.2d 195 (1991)
Brian Alfred ROSE, Appellant,
v.
STATE of Florida, Appellee.
No. 89-1196.
District Court of Appeal of Florida, Fourth District.
February 6, 1991.
On Motion for Rehearing May 8, 1991.
*196 Fred Haddad, Fort Lauderdale, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Carol Cobourn Asbury, Asst. Atty. Gen., West Palm Beach, for appellee.
WARNER, Judge.
This is an appeal from appellant's conviction for aggravated child abuse and first degree murder for the death of his girlfriend's eighteen month old child. Appellant raises nine points. We affirm on all issues but address only three herein.
Appellant first claims that the trial court erred in not allowing him to present evidence that medical negligence contributed to the child's death. We disagree based on Hallman v. State, 371 So.2d 482, 485 (Fla. 1979) (emphasis added) which held:
[a] defendant cannot escape the penalties for an act which in point of fact produces death, which death might possibly have been averted by some possible mode of treatment. The true doctrine is that, where the wound is in itself dangerous to life, mere erroneous treatment of it or of the wounded man suffering from it will afford the defendant no protection against the charge of unlawful homicide.

See also Barnes v. State, 528 So.2d 69 (Fla. 4th DCA 1988). In this case the evidence showed that the head injuries suffered by the child were in themselves lethal and were caused by child abuse. Although medical treatment might have saved the child's life, it does not excuse defendant's act. Hampton v. State, 542 So.2d 458 (Fla. 4th DCA 1989) is distinguishable. In that case we held that evidence of lack of medical care was admissible because the state had made it an issue in the state's case in chief. By contrast, in the instant case the state did not question any of the doctors regarding the medical care or lack thereof.
The second issue is whether the trial court erred in allowing a medical examiner, Dr. Reeves, to testify for the state when he had originally been hired by the defense but the defense had determined not to call him as an expert. When the state contacted Dr. Reeves, he had not arrived at any opinions on the case, mainly because he had not been provided all of the information by the defense necessary to formulate those opinions. It appears that the defense did not provide them because the attorney determined not to use him as a witness. At trial appellant's attorney moved to exclude the doctor's testimony offered by the state because the attorney stated that he had discussed theories, facts, and findings with Dr. Reeves and contended that the *197 attorney-client privilege barred the state from calling him. The trial court granted the motion but only to the extent that the doctor's testimony involved actual privileged communications. Appellant never made a specific objection throughout the expert's testimony that the doctor was revealing a specific privileged communication.
Appellant relies on Pouncy v. State, 353 So.2d 640 (Fla. 3d DCA 1977) which held that the doctrine of attorney-client privilege bars the state from calling as a witness a psychiatrist hired by an accused or his counsel for the sole purpose of aiding the defense attorney's preparation of an insanity defense. This holding has been codified in Florida Rule of Criminal Procedure 3.216(a). However, the attorney-client privilege is appropriately asserted in such cases because, as Pouncy pointed out, quoting United States v. Alvarez, 519 F.2d 1036, 1047 (3d Cir.1975):
A psychiatrist will of necessity make inquiry about the facts surrounding the alleged crime, just as the attorney will. Disclosures made to the attorney cannot be used to furnish proof in the government's case. Disclosures made to the attorney's expert should be equally unavailable, at least until he is placed on the witness stand. The attorney must be free to make an informed judgment with respect to the best course of the defense without the inhibition of creating a potential government witness.
Thus, the assertion of the privilege in the psychiatric witness cases is based on the confidential communications which may be made to the psychiatrist. See also Tucker v. State, 484 So.2d 1299 (Fla. 4th DCA 1986); Ursry v. State, 428 So.2d 713 (Fla. 4th DCA 1983).
In the instant case the appellant's attorney nowhere asserted that confidential communications between appellant and the attorney which were passed on to the expert were involved. Instead what he claimed was that he had sent Dr. Reeves all of the autopsy information and photographs and that he had discussed his defense strategy with him. Neither of these contentions support the assertion of the attorney-client privilege. First, the autopsy information which he received from the state was in no way privileged. And, second, the discussion of defense strategy falls within a work product privilege granted under Florida Rule of Criminal Procedure 3.220(g)(1), not an attorney-client privilege. No objection was made on work product grounds. Furthermore, Dr. Reeves stated, and the attorney for appellant conceded and accepted, that all of the doctor's opinions rendered in this case were based on materials supplied by the state and meetings with the pathologist who performed the autopsy on the child, not on any conversations or material provided by the defense. Therefore, the record does not support the contention that the state was provided with material or opinions which would constitute the attorney's work product.
That is not to say we have no concern for the state's use of a witness consulted by the defense. If this were a civil case, the state may not have been allowed in this instance to use Dr. Reeves. See Fla. R.Civ.P. 1.280(b)(4)(B). Under the similar Federal Rule, in Durflinger v. Artiles, 727 F.2d 888 (10th Cir.1984), the court held that where defendant had retained an expert originally retained by the plaintiff but not used, the trial court did not abuse its discretion in excluding the witness from testifying. Nevertheless, the purpose of the civil rule is fairness in preparing for trial. Likewise, the purpose of the pretrial procedural rules in criminal cases is to assure the defendant of his right to a fair trial. See State v. Coney, 272 So.2d 550 (Fla. 1st DCA 1973), cert. discharged, 294 So.2d 82 (Fla.). Thus, the trial court must determine whether or not the defendant was prejudiced in his right to a fair trial, and we should not overturn his decision absent an abuse of that discretion.
In this case the trial court allowed the witness to testify after carefully determining that attorney-client communications should not be revealed, which was the basis for the original objection. We cannot find that the trial court abused its discretion in *198 this regard, particularly in light of the defense concession at trial that Dr. Reeves had not used confidential information in formulating his testimony.
Furthermore, even if the use of Dr. Reeves was error, it was harmless. We have read all of the medical testimony presented by the five doctors who testified, including Dr. Reeves. We find that Dr. Reeves' testimony was cumulative of the testimony of the other four doctors. In particular, the testimony of Dr. McCormick, a nationally recognized expert, was equally as compelling as that of Dr. Reeves and primarily relied on by the State in its closing argument. All of the physical evidence in this case and the doctor's testimony, even absent Dr. Reeves, overwhelmingly pointed to the guilt of the appellant.
Because of the application of the harmless error doctrine we also find no reversible error in Dr. Reeves' comment during his testimony that he was first contacted by defense counsel. The defense moved for a mistrial after the comment was made, and the motion was denied. The defense then requested a curative instruction which was granted, and the court told the jury to disregard the comment. Even if the comment might be interpreted as a failure to call a witness which may have impinged on his right to remain silent and his presumption of innocence, see Romero v. State, 435 So.2d 318 (Fla. 4th DCA 1983), we have examined the entire record and find that there is no possibility based upon the overwhelming evidence of guilt that this comment influenced the jury verdict. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Finally, we hold that the trial court did not err in denying the motion to suppress Rose's second statement to the police. Rose contacted the sheriff's office to make the second statement. It appears that Rose had been to an arraignment before a judge earlier that day, and the judge had appointed a public defender. Rose did not ask for his attorney, and before he made the statement, his Miranda rights were read to him. He signed a waiver of those rights. Rose then asked for assurance from the detective that making a statement would not "screw anything up there", referring to his public defender appointment. The detective told him that he was not aware that it would cause a problem. Appellant now claims that this "screw up" statement was an equivocal request for an attorney to be present. As such, appellant contends that the police were required to cease all questioning until the meaning of the request was clarified. Since this was not done, appellant states that the statement must be suppressed.
While Florida case law is very clear that once a defendant makes any equivocal request for an attorney all questioning except to clarify the request must cease, Martinez v. State, 564 So.2d 1071 (Fla. 1990), we do not interpret appellant's statement as a request to have an attorney present under the circumstances of this case. First, Rose initiated the police contact after he knew he was entitled to a public defender and one had been appointed for him. He then signed a waiver of rights form at the time of the interview. Second, before making the "screw up" statement, he told the police that he had not told the truth in his first statement because he "was worried about a lawyer", but that since the child died, that was not important any more. He repeated this at the end of the statement. Third, appellant testified at trial substantially in accordance with the second statement. And in his testimony at trial, elicited by his counsel, he reiterated his lack of concern that a lawyer be present.
Q: Had you talked to a lawyer?
A: No.
Q: Had a lawyer been appointed for you in court?
A: No. I never saw a lawyer.
Q: Okay. Did you ask for a lawyer?
A: No.
Q: You went to the police yourself?
A: Yes.

*199 Q: You called them up?
A: Yes.
Q: You weren't concerned about a lawyer any more?
A: It didn't matter.
Q: And that's in your statement isn't it?
A: Yeah.
Q: And why didn't it matter?
A: Bear was dead... .
(emphasis supplied).
Given such testimony we cannot interpret the question as an equivocal request to have an attorney present during the statement. Instead it appears that he was concerned about having a lawyer to follow through with other court proceedings. Therefore, we hold that the trial court did not err in denying the motion to suppress the second statement.
We find no reversible error in connection with the remaining points raised and therefore affirm the conviction and sentence.
GLICKSTEIN and STONE, JJ., concur.

ON MOTION FOR REHEARING
In his motion for rehearing appellant claims that our opinion determining that the trial court did not err in excluding evidence of intervening medical negligence as a cause of death is wrong and confuses "exoneration" with "examination". He claims that while he may not be excused from his acts by reason of medical negligence on the victim, the jury still has a right to hear evidence that the attending physicians of the child failed to properly diagnose and treat his injuries. Had they done so, he alleges, the child would not have died. We disagree that the trial court erred in excluding the defendant's medical evidence which attempted to show the medical malpractice and write to expound more fully on this issue.
As early as the turn of the century, the supreme court adopted the doctrine that medical neglect did not excuse a defendant from a charge of murder. In Johnson v. State, 64 Fla. 321, 59 So. 894, 895 (Fla. 1912) the court stated:
A defendant cannot escape the penalties for an act which in point of fact produces death, which death might possibly have been averted by some possible mode of treatment. The true doctrine is that, where the wound is in itself dangerous to life, mere erroneous treatment of it or of the wounded man suffering from it will afford the defendant no protection against the charge of unlawful homicide. See, also, Wharton on Homicide (3d Ed.) § 35, wherein it is said that the subsequent neglect or mismanagement must have been the sole cause of death.
This rule has been followed consistently. Hallman v. State, 371 So.2d 482 (Fla. 1979), (cited in this opinion); Hampton v. State, 542 So.2d 458 (Fla. 4th DCA 1989); Barnes v. State, 528 So.2d 69 (Fla. 4th DCA 1988); State v. Smith, 496 So.2d 195 (Fla. 3d DCA 1986); Tunsil v. State, 338 So.2d 874 (Fla. 3d DCA 1976); Karl v. State, 144 So.2d 869 (Fla. 3d DCA 1962). In State v. Smith, the Third District held that a claim that a victim's death was caused by a hospital's negligence after the victim presented himself to the hospital for treatment which should have saved his life was not a valid defense, relying on Johnson and Tunsil.
However, the exact question presented by this appeal appears never to have been addressed directly by the courts of this state, that is, whether evidence of medical malpractice may properly be excluded when offered by the defense. In all of the other cases cited the appellate court has considered the question of whether appellant's conviction should be overturned based upon the defendant's assertion of this theory as a defense.
We have located two cases from other jurisdictions which address this very point. Both in State v. Jacobs, 194 Conn. 119, 479 A.2d 226, cert. den., 469 U.S. 1190, 105 S.Ct. 963, 83 L.Ed.2d 968 (1985) and Gordon v. State, 649 P.2d 807 (Okl.Cr.App. 1982), the appellate courts held that a trial court did not err in excluding evidence tending to show medical malpractice because such evidence was irrelevant and immaterial unless it could be shown that as a matter of law, the malpractice was the sole cause of death. We think that is the proper disposition of the question. Since as a matter of law malpractice in the treatment *200 of the victim which leads to the victim's death is immaterial to defendant's culpability, then evidence presented to prove malpractice is irrelevant. See section 90.401, Florida Statutes (1989), "Relevant evidence is evidence tending to prove or disprove a material fact."
In the instant case, the cause of the child's death was a lethal injury to the back of the head. The evidence was unrefuted that death was caused by the resulting subdural hematoma. The physicians' alleged failure to diagnose and treat this injury in no way contradicted the fact that, left untreated, it was a mortal wound. Thus, as a matter of law, the subsequent alleged misdiagnosis and failure to treat was no defense to defendant's liability for the acts with which he was charged. See Tunsil v. State. (lack of affirmative medical treatment did not constitute an intervening cause relieving a defendant of criminal responsibility for the victim's death) Therefore, if medical negligence was not a legal "cause" of death so as to avoid criminal responsibility, it was not a material fact in issue, and evidence of it was immaterial and irrelevant. The trial court does not err by excluding such evidence.
The appellant raises the possibility that State v. Arner, 538 So.2d 528 (Fla. 4th DCA 1989) and Hampton v. State, 542 So.2d 458 (Fla. 4th DCA 1989) conflict with this decision. We have already distinguished Hampton in the main opinion in this case. We have reviewed State v. Arner and the dissent therein and do not find any express conflict. We would point out that dissents do not necessarily establish conflict in this court, as a dissenter's view of the evidence or its impact may differ with that of the majority of the panel. Since the opinion is short, we will not imply in the majority's affirmance in the case facts which are not there.
The only other allegedly conflicting case cited is that of State v. Manno, 550 So.2d 31 (Fla. 3d DCA 1989). However, that case was decided on a jury instruction issue, not an evidentiary issue. Furthermore, if that case is in conflict with the instant case, as contended, then it is also in conflict with Tunsil and Smith which are both Third District cases, neither one of which were addressed in Manno.
Consequently, we deny the motion for rehearing on all issues.