801 So.2d 124 (2001)
Bryan DONOHUE, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-3174.
District Court of Appeal of Florida, Fourth District.
October 31, 2001.
Rehearing Denied December 20, 2001.
Bert Winkler, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, Bart Schneider and Melynda Melear, Assistant Attorneys General, West Palm Beach, for appellee.
KLEIN, J.
Appellant was convicted of second degree murder and robbery, both of which were enhanced as hate crimes. We reverse the murder conviction for a new trial because the trial court erred in excluding evidence of subsequent medical treatment *125 which may have caused the victim's death. We affirm the robbery conviction.
The evidence showed that appellant left a group of friends, with whom he had been drinking and smoking marijuana, about 11:30 P.M., and returned about a half hour later. He told his friends that "some guy tried to rape me." Appellant had a "walkman" and a book bag which he had not been carrying when he left the group. Appellant was quoted as saying that the victim had called him "beautiful" and that he had hit and kicked the victim.
After some further discussion, appellant and another person went to find the victim. Others in the group followed them later and found the victim on the ground, covered with blood, and breathing heavily. The appellant admitted beating the victim again because he was a "faggot." One of the members of the group called 911, and paramedics were summoned, but the victim, who was taken to the hospital, died several days later.
The defense presented evidence, which was undisputed, that the paramedics who arrived on the scene had attempted to intubate the victim, in order to make it easier for him to breathe, but had been unsuccessful in doing so. A physician who examined the victim when he arrived at the hospital concluded, upon hearing stomach sounds coming from the breathing tube, that it had been inserted down the esophagus, not the trachea, which would cause asphyxiation.
The trial court would not permit defendant's pathologist to testify that the victim's death could have resulted from "mal-intubation." In doing so, the court relied on Rose v. State, 591 So.2d 195 (Fla. 4th DCA 1991). Rose is factually distinguishable from this case because in Rose it was undisputed that the injury, which was apparently untreated, resulted in death. Rose relied on Johnson v. State, 64 Fla. 321, 59 So. 894, 895 (1912), in which the court stated:
A defendant cannot escape the penalties for an act which in point of fact produces death, which death might possibly have been averted by some possible mode of treatment. The true doctrine is that, where the wound is in itself dangerous to life, mere erroneous treatment of it or of the wounded man suffering from it will afford the defendant no protection against the charge of unlawful homicide. See, also, Wharton on Homicide (3d Ed.) § 35, wherein it is said that the subsequent neglect or mismanagement must have been the sole cause of death.
Defendant's expert was unable to say, on the extensive proffer of his testimony, that the "mal-intubation" was the sole cause of the victim's death. He testified that the cause of death was deprivation of oxygen because of mal-intubation and blunt trauma, "probably both." He did testify that the various injuries sustained by the victim in the beating were not life threatening.
The trial court was persuaded by the state that under Rose and Johnson, if the defendant's actions put the stream of events in motion, the medical treatment cannot be the sole cause of death, and evidence of maltreatment is inadmissible. If that were really what our supreme court meant in Johnson, then this type of evidence would never be admissible, because in every case there would be no medical treatment but for the crime. In a case in which a victim's jaw was fractured in a battery, but the victim died as a result of subsequent negligent administration of anesthesia, the defendant could be charged with a homicide and would be precluded from proving that he did not cause the death.
*126 The issue in this case is not, as it appears to have been in some of the cases cited in Rose, whether the defendant should have been exonerated by the court because there was another cause of death. Appellant is seeking to admit evidence relevant only to the issues of whether (1) the beating was so severe that it was the product of a depraved mind, an element of second degree murder; and (2) the beating caused the death.
We conclude that Johnson, in which our supreme court adopted the principle that the subsequent treatment must have been the sole cause of death, did not involve admissibility of evidence, but was rather a case in which the defendant was seeking a court-ordered acquittal on the homicide charge. We come to that conclusion because the Johnson court adopted the rule from Daughdrill v. State, 113 Ala. 7, 21 So. 378 (1897), in which the issue was whether the jury should have been given an instruction based on deficient medical treatment. That instruction would have directed the jury to acquit if the State had not proved beyond a reasonable doubt that it was the knife wound, not the treatment, which killed the victim.
Limiting the admissibility of evidence of maltreatment to cases in which the treatment was the sole cause of the death would, in our opinion, be inconsistent with the following principle reiterated by the Florida Supreme Court in Rivera v. State, 561 So.2d 536, 539 (Fla.1990): "[W]here evidence tends in any way, even indirectly, to establish a reasonable doubt of defendant's guilt, it is error to deny its admission." See also Vannier v. State, 714 So.2d 470, 472 (Fla. 4th DCA 1998)(in murder prosecution, exclusion of evidence that decedent might have committed suicide was reversible error); Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)("[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense.").
Applying the Johnson rule to admissibility of evidence would also be inconsistent with cases holding that expert medical testimony as to the cause of death in a homicide case need not meet the "reasonable medical certainty" standard used in civil cases. Buenoano v. State, 527 So.2d 194 (Fla.1988); Butts v. State, 733 So.2d 1097 (Fla. 1st DCA 1999). If the State's expert is allowed to testify that the crime could have caused the death, Buenoano at 198, we know of no reason why the defendant's expert should not be able to testify that medical treatment could have caused the death. That type of evidence could have created a reasonable doubt in the minds of the jurors in this case as to whether appellant had a depraved mind and whether appellant was guilty of a homicide.
Appellant also argues that the trial court erred in admitting gruesome autopsy photographs. In Almeida v. State, 748 So.2d 922, 929-30 (Fla.1999), the supreme court held that it was error to admit an autopsy photo of the victim that depicted the gutted body cavity. The court explained that the general standard of relevance "by no means constitutes a carte blanche for the admission of gruesome photos." Although the relevance of these autopsy photographs in appellant's first trial was questionable, we need not decide whether it was error to admit them in evidence because they may be more relevant in the new trial.
Appellant also argues that the trial court should have instructed the jury on the lesser included offenses of aggravated battery and battery. In view of the fact that the appellant will be entitled to contest the cause of death in his new trial, that instruction should be given. Pope v. State, 679 So.2d 710 (Fla.1996); Drotar v. State, 433 So.2d 1005 (Fla. 3d DCA 1983).
*127 We have considered the other issues, but none merit discussion other than the prosecutor's comment in closing argument, raised in point one, which we assume will not occur on retrial. We therefore reverse the murder conviction for a new trial.[1] We affirm the robbery conviction.
DELL, J., and ALTONAGA, CECILIA M., Associate Judge, concur.
NOTES
[1] A different panel of this court affirmed without opinion the appeal of the co-defendant who participated with the appellant in the beating. Dodge v. State, 791 So.2d 483 (Fla. 4th DCA 2001). Because Dodge raised the issue on which we are reversing appellant's conviction, and the facts as to both co-defendants as to that issue are the same, Dodge will also be entitled to a new trial. Although Dodge's conviction was affirmed in a prior term of court, which precludes recalling the mandate in that case, Dodge can obtain habeas corpus relief. Raulerson v. State, 724 So.2d 641 (Fla. 4th DCA 1999); Romero v. State, 637 So.2d 7 (Fla. 4th DCA 1994).