POLEN, J.
 

 Appellant, Scott Wynkoop, was charged by information with manslaughter by culpable negligence and vehicular homicide of his nine-year-old stepdaughter, Samantha Rosales, for events occurring on May 17, 2005. Following a jury trial, Wynkoop was convicted of both charges. The trial court entered a non-statutory downward departure sentence of ten years in prison, suspended, with ten years of probation being imposed. Wynkoop appeals his conviction, and the State cross-appeals the sentence. We reverse as to both.
 

 On the afternoon of May 17, 2005, Wyn-koop picked up Samantha from her aftercare program. Before driving home, Wyn-koop stopped at Publix. During the ride home, Samantha sat in the backseat on the driver’s side of Wynkoop’s vehicle. Wyn-koop drove north on Dixie Highway in the same direction as an approaching freight train. The windows of Wynkoop’s vehicle were up, the radio was on, and Wynkoop was listening to Samantha talk.
 

 The freight train, comprised of 138 rock hauling cars pulled by three engines, was travelling north on the railroad tracks at forty-five miles per hour parallel to the road Wynkoop was on. As the train approached the crossing at Hidden Valley Boulevard, the engineer sounded the horn four times. Some witnesses recalled hearing the sound of the horn and others did not. The gate was down blocking the two westbound lanes of traffic, and the lights on the gate were flashing. Wynkoop was familiar with the area because he lived nearby on Hidden Valley Boulevard.
 

 Wynkoop made a left-hand turn, crossed a broken yellow lane marker, and drove around the gate to cross the railroad crossing. As Wynkoop crossed the railroad tracks, the train struck his vehicle from behind causing his car to spin across the tracks, striking a railroad battery box and a signal box before stopping. Wynkoop climbed out of the vehicle having sustained minor injuries. Samantha died having sustained a broken collar bone, broken ribs, a torn spleen, injury to her lungs, injury to her liver, brain injuries, and internal bleeding.
 

 Prior to trial, the State filed a motion in limine to preclude irrelevant defense evidence. In its motion, the State maintained that Wynkoop had attempted to “beat” the train by weaving around the closed railroad gates, ignoring the red flashing lights and the bells associated with the gates. The State argued that expert testimony regarding whether the light at the intersection was green allowing Wynkoop to turn left, whether the gate at the railroad crossing was too short, whether the distance between Dixie Highway and the railroad crossing was too short, and whether the train’s horn sounded long enough under the applicable regulations should not be admitted. The railroad crossing at
 
 *1168
 
 Hidden Valley Boulevard met all local, state, and federal requirements, had never been determined to be an inherently dangerous crossing, and had never been the site of prior fatalities. The State pointed out that evidence of the railroad’s negligence was inadmissible unless the railroad’s negligence was a superseding, intervening cause of the crash.
 

 Wynkoop filed a motion in opposition to the State’s motion to preclude irrelevant evidence in which he argued that but for the alleged defects in the railroad crossing, the accident and Samantha’s death would never have occurred, and thus, that expert testimony and other evidence must be admitted in order for him to present his defense. Specifically, Wynkoop argued that the evidence would show that the turn path at the intersection “funneled” his vehicle into an area not blocked by the railroad crossing gate; that the green light at the intersection allowed him to turn left; that he did not hear a train horn sound before the accident; and that because of the defects he had a split second to avoid the train.
 

 Following jury selection, the trial judge granted the State’s motion. The trial judge found that Wynkoop was entitled to the defenses he listed in his motion in opposition but that expert testimony was not warranted. The court found that the two most important facts for Wynkoop— that the light was green allowing him to make the left turn and that the railroad gate was too short to completely cover both westbound lanes of traffic — were not in dispute. The court also determined that expert testimony regarding these facts was not admissible because whether the defenses were proven was a jury issue and the design of the crossing was clearly not the sole proximate cause of the accident. Expert testimony which drew conclusions about whether the design of the railroad crossing met state and federal regulations was not necessary.
 

 The trial court allowed Wynkoop to make a proffer of evidence. Wynkoop’s written proffer listed three expert witnesses: Harold Rugh, James Sottile, and Rick Swope.
 

 Rugh worked for twenty-five years as a locomotive engineer, trainmaster, master mechanic, equipment inspector and chief inspector. Rugh worked an additional twenty-six years with the Federal Railway Administration investigating accidents and developing, enforcing, and interpreting federal regulations. During his fifty-two years of experience, Rugh had instructed engineers on the proper sounding of train horns “thousands of times,” had inspected train horns approximately thirty times a week for twenty-five years, and had read event data recorders “hundreds of times.” Rugh’s examination of the event data recorder from the train which struck Wyn-koop revealed that the train engineer had sounded four blasts which were less than half as long as they should have been and were separated by silences five times as long as they should have been. However, as the State’s expert testified, the black box only records how long the horn was activated but in reality horns can continue to sound after they are done being activated. Rugh concluded that the horn blasts were not sufficiently loud, lengthy or continuous enough to alert drivers at the crossing. Finally, Rugh believed that the duration of the soundings violated Florida law and federal regulations and that “[b]e-cause of these short soundings, the child is dead.”
 

 Sottile worked in the railroad industry for forty years between the signal department of the Long Island Railway and the Federal Railroad Authority as a train signal and control inspector. Sottile proffered that drivers in the northbound and
 
 *1169
 
 southbound lanes on Dixie Highway had green lights allowing them to turn toward the crossing even as the train approached. The green lights meant there was not total preemption — all traffic stopped in all directions — -at the intersection which violated Florida law and would have prevented Wynkoop’s accident.
 

 Sottile and Swope explained that the gate arm which descended at the Hidden Valley crossing did not entirely block both westbound lanes and that this defect in conjunction with the lack of a median before the crossing allowed a vehicle to pass through the crossing. Sottile concluded that a median would have prevented Wyn-koop’s vehicle from entering the crossing and that the lack of a median together with the shortness of the gate arm contributed to Wynkoop’s accident. Sottile stated that the length of the gate arm violated federal regulations.
 

 Finally, Swope found that the road lines east of the Hidden Valley train crossing would allow and guide a driver to drive around the gate arm into the crossing. Swope concluded that there was no physical evidence that Wynkoop was attempting to beat the train.
 

 Wynkoop requested permission to cross-examine the State’s homicide investigator regarding whether he had considered an unsolicited letter from Paul Bodner, an owner of a consulting firm, which stated that the railroad crossing was unsafe and in violation of state and federal regulations. Defense counsel argued that it was relevant to show that the investigator’s failure to “follow up” on the letter indicated the inadequacy of his investigation. The State countered that whether the investigator followed up on the letter was irrelevant because the investigator had been assured by the authorities that the crossing met all applicable regulations, the letter was unsolicited, and the investigator believed Bodner was a “kook.” The trial court ruled that the cross-examination would not be allowed per its earlier ruling excluding evidence.
 

 The supervisor of Boca Raton’s traffic signal department testified that when a train passed through the Hidden Valley Boulevard crossing, the traffic lights for Dixie Highway remained solid green. He explained that if the light went to red under such circumstances, it would cause conflicting signals and rear-end accidents and would limit the effectiveness of traffic control because people would eventually start running the light. Defense counsel asked the supervisor if there was any reason not to stop traffic in all directions by total preemption, and the supervisor replied that it would go against the expectancy of the drivers, but that it was possible to do. Finally, defense counsel asked the supervisor if there was a mechanical, technical, or engineering reason to not stop traffic in all directions when a train is crossing, and the supervisor replied that it could be done, but it was not common practice. Defense counsel argued that the supervisor’s testimony “opened the door” for defense evidence regarding proper traffic signalization and total preemption at the subject intersection. The trial court rejected defense counsel’s argument, explained that he could not open his own door, and reiterated its earlier ruling explaining that expert testimony was not admissible because it would not prove an intervening superseding cause of the accident.
 

 A jury found Wynkoop guilty as charged. Prior to sentencing, the State
 
 nolle prossed
 
 the vehicular homicide charge. The trial court adjudicated Wyn-koop guilty of manslaughter by culpable negligence and issued a suspended sentence of ten years imprisonment with a probationary term of ten years. As a spe
 
 *1170
 
 cial condition of probation, the court required Wynkoop to serve 364 days in jail on weekends. This condition was later modified to require Wynkoop to serve 364 consecutive days in jail. Wynkoop now timely appeals and the State cross-appeals.
 

 Wynkoop argues the trial court erred in granting the State’s motion in limine to exclude defense evidence that the design of the railroad crossing and the engineer’s failure to blow the train horn in keeping with regulations caused the accident. Wynkoop asserts that the court’s decision violated his Sixth Amendment right to present a defense. The State replies that the evidence was properly excluded because third party negligence was not the sole proximate cause of the accident and cross-appeals the trial court’s determination that Wynkoop was entitled to a downward departure.
 

 A trial court’s decision regarding the admissibility and scope of expert testimony is reviewed for an abuse of discretion.
 
 Simmons v. State,
 
 934 So.2d 1100, 1116 (Fla.2006).
 

 The State relies, in part, on
 
 Filmon v. State,
 
 336 So.2d 586, 591 (Fla.1976), to support its proposition that, unless it was the sole proximate cause of the accident, neither the negligence of the deceased nor that of a third party is a proper defense to manslaughter based on culpable negligence in operating a motor vehicle. In
 
 Filmon,
 
 defendant argued that the court erred in refusing to instruct the jury regarding the left-hand turn statute because the jury should have considered the statute and decedent’s conduct before determining whether the defendant’s conduct was the proximate cause of the decedent’s demise.
 
 Id.
 
 The Florida Supreme Court held that the trial court had not erred in refusing to instruct the jury regarding the left-hand turn statute because “the conduct of the decedents or the decedents’ driver could only be controlling if it were the Sole proximate cause of the accident.”
 
 Id.
 

 Other cases have reiterated the
 
 Filmon
 
 Court’s holding.
 
 See Keller v. State,
 
 849 So.2d 385, 387 (Fla. 2d DCA 2003) (“In a vehicular homicide prosecution, evidence of a victim’s negligence is relevant only if the victim’s act was the sole proximate cause of the accident that caused the victim’s death”);
 
 Brimmer v. State,
 
 541 So.2d 1307, 1308 (Fla. 4th DCA 1989) (finding no error in trial court’s refusal to instruct the jury that the decedent could have been the sole cause of the accident where there was no “reasonable view of the evidence upon which a jury could conclude that the victim’s act of failing to yield the right of way was the sole proximate cause of the accident”). Finally, it has been noted that cases where the decedent’s conduct is admissible as a defense have all involved circumstances where the deceased’s conduct alone caused the accident.
 
 Reaves v. State,
 
 979 So.2d 1066, 1069 (Fla. 1st DCA 2008).
 

 In the present case, the trial court found that any third party negligence in the design of the railroad crossing or operation of the train was not the sole proximate cause of the accident and Samantha’s death, and thus, that evidence of that negligence was inadmissible. However, the present ease does not fall squarely within the holdings of
 
 Filmon
 
 and its progeny because the evidence at issue here involved expert testimony regarding the acts or omissions of third parties whereas the
 
 Filmon
 
 line of cases address the issue of whether evidence is admissible to show the negligence of the decedent.
 

 As the State points out, Wynkoop was not entirely deprived of his ability to present a defense because of the court’s ruling. Instead, he was denied the ability to pres
 
 *1171
 
 ent expert testimony. Wynkoop elicited the testimony of an eyewitness who observed cars crossing the broken yellow line when turning left, an expert witness who testified regarding the train’s event data recorder, eyewitnesses who testified that Wynkoop’s light was green and there was no red turn arrow when Wynkoop made the left turn into the crossing, eyewitnesses who did not recall hearing the train’s horn, and witnesses who testified that no second gate or median prevented a driver from navigating around the gate blocking the westbound traffic. Finally, photographs and diagrams of the intersection and the traffic signalization plan for the intersection were admitted into evidence allowing the jury to appreciate the design of the subject railroad crossing.
 

 Thus, the jury was presented with evidence of the design of the railroad crossing and the operation of the train so that they could consider Wynkoop’s defenses. Wyn-koop acknowledges that lay testimony was elicited regarding the design of the crossing and operation of the train horn but argues that the essence of his defense was undermined because his expert witnesses were not allowed to testify regarding the causal link between those conditions and the accident.
 

 Wynkoop asserts that the excluded expert evidence regarding the design of the crossing and the operation of the train horn raised reasonable doubt as to whether his conduct caused the accident, and thus, should have been admitted. Here, Wynkoop relies heavily on Florida courts’ broad policy that “where evidence tends in any way, even indirectly, to establish a reasonable doubt of defendant’s guilt, it is error to deny its admission.”
 
 Donohue v. State,
 
 801 So.2d 124, 126 (Fla. 4th DCA 2001)(quoting
 
 Rivera v. State,
 
 561 So.2d 536, 539 (Fla.1990)).
 

 In
 
 Donohue,
 
 the defendant was found guilty of second degree murder and robbery after he allegedly beat a man to death and stole his belongings. 801 So.2d at 124-25. Undisputed evidence showed that paramedics unsuccessfully attempted to intubate the victim. When the victim arrived at the hospital, a physician determined that the paramedics had inserted the tube down the esophagus instead of the trachea causing asphyxiation. The trial court refused to allow a defense expert to testify that the mal-intubation could have caused the victim’s death.
 
 Id.
 
 at 125. This court held that the trial court erred in refusing to allow such evidence because limiting the admissibility of evidence of maltreatment to cases in which that treatment was the sole cause of the death would hinder Florida’s broad policy of admitting evidence which tends to raise reasonable doubt.
 
 Id.
 
 at 126.
 

 We find
 
 Donohue
 
 particularly instructive in the present case. By refusing to allow defense expert testimony regarding the design of the subject railroad crossing and how that design may have contributed to the accident, the trial court infringed on Wynkoop’s right to present a theory of defense and to hold the State to its burden of proving
 
 beyond a reasonable doubt
 
 that his actions rose to the level of culpable negligence. While the trial court may certainly place reasonable parameters on the scope of expert evidence, to entirely exclude such evidence in this case violates the defendant’s Sixth Amendment rights.
 

 The State cross-appeals the trial court’s issuance of a downward departure sentence arguing that it is not supported by legal grounds. Whether there is a valid legal ground for a downward departure is a question of law, to be reviewed
 
 de novo. State v. Walker,
 
 923 So.2d 1262, 1264 (Fla. 1st DCA 2006). A trial court’s legal ground for a departure must be valid and
 
 *1172
 
 supported by competent substantial evidence.
 
 State v. Schillaci,
 
 767 So.2d 598, 600 (Fla. 4th DCA 2000). “A departure from the recommended guidelines sentence is discouraged unless there are circumstances or factors which reasonably justify the departure....” § 921.0016(2), Fla. Stat.
 

 Wynkoop faced a minimum sentence of 111.15 months. At the sentencing hearing, Samantha’s mother and Wynkoop’s wife, Marissa Wynkoop testified. Marissa begged the court not to sentence Wynkoop to prison time because she had lost her mother, her father, and her daughter, and her brother was in serious trouble. Marissa explained that Wynkoop was her emotional support. Wynkoop wrote a letter to the court in which he explained that if he served prison time, his wife and his mother would lose their homes and would otherwise be in financial turmoil.
 

 The trial court found that none of the grounds argued in Wynkoop’s motion applied but that a nonstatutory mitigator required a downward departure. Specifically, the court found that “the interest of the victim as represented by the mother” supported the departure and “the evidence is that if Scott Wynkoop goes to prison right now, the mother will suffer, probably lose her home and suffer a number of other ways emotionally and otherwise.” The court imposed a suspended sentence of ten years imprisonment with a probationary term of ten years. As a special condition, the court required Wynkoop to serve 364 days in jail on the weekends' — a condition which was later modified to be served as 364 consecutive days instead of weekends.
 

 The case which most clearly demonstrates the issue argued by the State is
 
 Rafferty v. State,
 
 799 So.2d 243 (Fla. 2d DCA 2001), in which the defendant was convicted of DUI manslaughter and DUI serious bodily injury after he drove while intoxicated and caused an accident resulting in the death of his six-year-old son and pai’alysis of his fiancée.
 
 Id.
 
 at 244. The Second District held that the trial court erred in granting Rafferty’s motion for a downward departure on the basis that his child had died, his fiancée had been severely injured, and the family needed his financial support.
 
 Id.
 
 at 248. The court pointed out that the legislature did not intend for sentences to be decreased when the victims are family or loved ones and that “it would not be good policy for the legislature to punish those with families to support less than those without families.”
 
 Id.
 

 A
 
 trial court may not issue a downward departure on the basis it did in the present case. However, should Wynkoop be convicted again, the court may reconsider whether any of the statutory parameters justify such a departure. Finally, while we recognize that granting a downward departure based on family suffering is not currently permissible, we think it appropriate for the legislature to consider whether the applicable statute should include these grounds in a tragic case such as this.
 

 Reversed and remanded for proceedings consistent with, this opinion.
 

 STEVENSON and DAMOORGIAN, JJ., concur.