SCHWARTZ, Senior Judge.
As a result of an incident on May 17, 2010, in which the defendant-appellee struck his wife with a hot iron leaving a permanent burn mark on her leg, he was charged with one count of simple battery and two of aggravated battery. Before trial, however, the defendant entered into a bargain in which he pled to one count of simple battery and one count of aggravated battery in return for a withhold of adjudication and — although the sentencing guidelines for the charges yielded a minimum sentence of 21.15 months in state prison — two years probation. Within two months, however, as found by the trial court in a now-uncontested ruling, Martinez violated his probation in several material respects. Because aggravated battery is a qualifying offense under the Anti-Murder Act, § 948.06(8)(c)3., Fla. Stat. (2009),[1] and he was also found to be— again, without present dispute — an unreasonable danger to the community, § 948.06(8)(e)l., Fla. Stat. (2009), and thus rendered a “violent felony offender of special concern,” the court was called upon to sentence him under section 948.06(8)(e)2.a., Florida Statutes (2009), which provides:
If the court has found that a violent felony offender of special concern [like Martinez] poses a danger to the community, the court shall revoke probation and shall sentence the offender up to the statutory maximum, or longer if permitted by law.
On the stated basis that this provision does not require the application of the guidelines[2] and even without consideration of *1015 the facts that (a) even if he had not been placed on and violated probation, the “bottom” of the guidelines was 21.15 months in state prison, and (b) once more without dispute, no valid basis for a downward departure was established in any way,[3] the trial court, having revoked probation, sentenced Martinez to only B64 days in the county jail, followed by reinstatement of probation.[4] The State appeals pursuant to section 924.07(l)(i), Florida Statutes (2010), and we reverse.
That error was committed below is conclusively established, without more, by section 921.002, Florida Statutes (2009), which provides:
The Criminal Punishment Code shall apply to all felony offenses, except capital felonies, committed on or after October 1,1998.
See also § 775.082(8)(d), Fla. Stat. (2009) (“The Criminal Punishment Code applies to all felonies, except capital felonies, committed on or after October 1, 1998. Any revision to the Criminal Punishment Code applies to sentencing for all felonies, except capital felonies, committed on or after the effective date of the revision.”); § 921.0024(l)(b)2., Fla. Stat. (2009) (section entitled “Criminal Punishment Code; worksheet computations; scoresheets,” providing for additional points “[i]f the community sanction violation is committed by a violent felony offender of special concern, as defined in s. 94-8.06” (emphasis added)). This statute, which could not be more categorical, unconditional, or unambiguous, clearly establishes that the code and the guidelines do apply to this case.[5] *1016 Indeed, they apply in spades.[6] The Anti-Murder Act was specifically passed to prevent just the kind of thing that occurred below. It was designed to obviate the thought-to-be undesirable spectacle of a person on probation for a designated serious crime violating that trust only to be restored to the same or equivalent status. The result below is in flagrant violation of that legislative objective. It is inconeeiva- *1017 ble that the legislature would have countenanced an end run around the statute by permitting instead the miscreant to be sentenced to prison (or, as here, jail) for any period, however short — 364 days, 60 days, or 60 minutes — solely within the presumably unreviewable discretion of the trial court.[7] Martinez initially escaped a 21.15 month sentence because the State agreed to a downward departure as part of a plea bargain. See § 921.0026(2)(a), Fla. Stat. (2009); State v. Pita, 54 So.3d 557, 560 (Fla. 3d DCA 2011). Here, having broken his side of the bargain, and over the protest of the State, he has actually come out better than he would have in the first place. We cannot approve such a conclusion. See Gracia v. State, 98 So.3d 1243, 1245 (Fla. 3d DCA 2012) (citing Doctor v. State, 677 So.2d 1372 (Fla. 3d DCA 1996) (special concurrence), approved, 698 So.2d 1224 (Fla.1997)).
Sentence reversed and remanded for re-sentencing under the guidelines.

. Section 948.06(8)(c)3. provides that "[a]g-gravated battery or attempted aggravated battery under s.784.045” is a qualifying offense for the purpose of this section.

. This was contrary to the position of both sides below. Thus, defense counsel stated:
Well, Judge, I believe — my understanding of this law, and the State's as well — and we could go over it — my understanding — and this is coming from, you know, the statute which I read earlier, and this is a brief on it — that if the Court, after conducting the required probation violation hearing, determines that a VO — you know, a violent felony offender has committed a violation of probation or community control, other than a failure to pay cost, fines, restitution, the Court must make written findings as to whether or not the violent offender of spe *1015 cial concern poses a risk of danger to the community. And then there’s a list of factors. If your Honor finds that he is a danger, then you must sentence somewhere between the range of the bottom of the guidelines up to the statutory maximum. If you find that he is not a danger, you’re free to sentence him to anything that you want ... [■]”
(emphasis added). The State thoroughly agreed. Only the trial judge didn’t.

. The trial judge apparently based his sentence on the plea of Martinez’s now-reconciled wife who stated that she did not wish him kept from his family for a lengthy period. But see Campbell v. State, 48 So.3d 201 (Fla. 2d DCA 2010); State v. Geoghagan, 27 So.3d 111 (Fla. 1st DCA 2009); Wynkoop v. State, 14 So.3d 1166 (Fla. 4th DCA 2009); State v. Kasten, 775 So.2d 992 (Fla. 3d DCA 2000).

. Because the violation of probation is factored into the guideline computation, the bottom of the guidelines now provides for two and one-half years in prison. See § 921.0024(l)(b)2.a„ Fla. Stat. (2009).

. The Senate Staff Analysis and Economic Impact Statement concerning the Anti-Murder Act, includes the following:
This bill addresses felony probation and community control violations by designating certain alleged probation or community control violators as violent felony offenders of special concern.... The court must also determine whether to revoke or continue the probation or community control. If it is determined that the violator is a danger to the community, the court must revoke probation or community control and sentence the offender according to the Criminal Punishment Code, up to the statutory maximum or longer if permitted by law. The Criminal Punishment Code provides a point system to determine an offender’s minimum sentence. Currently, violation of probation or community control by commission of a new felony adds an additional 12 points to the score, and violation for any other reason adds 6 points. For a violent felony offender of special concern, the bill increases the additional points to 24 for a new felony conviction and 12 for other violations.
[[Image here]]
The Criminal Punishment Code, ss. 921.002 through 921.0027, F.S., is applicable to all felony offenses committed on or after October 1, 1998. The code provides a mathematical formula that determines the minimum sentence that a court may impose upon an offender. The minimum sentence is calculated based upon the total number of points assessed against the offender. If *1016 the total points exceed 44, the court must subtract 28 points and multiply by 75 percent. The resulting number is the minimum number of months in state prison that the offender must serve. However, the court may find that one or more of the mitigating circumstances at s. 921.0026, F.S., warrants a downward departure, except for capital felonies. Where a downward departure is granted, the court may sentence the offender to less than the minimum sentence.
[[Image here]]
If the court finds that the violent felony offender of special concern has violated any non-monetary term of probation or community control, it must decide whether to revoke the probation or community control. The court must also determine whether the offender poses a danger to the community. If the court determines that the violent felony offender of special concern is a danger, it must revoke probation or community control and sentence the offender under the Criminal Punishment Code up to the statutory maximum or longer if permitted by law for the underlying offense. If the offender is found not to be a danger to the community, the judge would have the same options that it has with any other violator, including continuing community supervision.
The bill does not specify that a hearing is required for the court to make its dangerousness determination, but does require that the finding of dangerousness be made based upon a preponderance of the evidence. The bill sets forth a number of factors that may be considered by the court in determining dangerousness, and requires the court to enter a written order in support of its findings.
The bill also amends the Criminal Punishment Code (s.921.0024, F.S.) to increase the number of Community Sanction Violation Points that are added to the violent felony offender of special concern’s Total Sentence Points as a result of the violation. These additional points will have the effect of lengthening the lowest permissible sentence. The bill increases the additional assessment to 12 points for a technical violation or new misdemeanor offense, as opposed to the 6 points assessed under current law. For a violation involving a conviction for a new felony, the bill increases the assessment to 24 points from the current 12 points.
Fla. S. Judiciary Comm., CS for SB 146 (2007) Staff Analysis (Feb. 19, 2007) (on file with State Archives of Florida).

. While the trial judge relied on the fact that the Criminal Punishment Code was not specifically referenced in section 948.06(8)(e)2.a., the legislature has provided, contrariwise, when the guidelines are not to be applied that they are specifically excluded from consideration. See § 775.084(4)(h), Fla. Stat. (2009) (providing that a sentence imposed under this statute is not subject to the Criminal Punishment Code); § 775.082(8)(d), Fla. Stat. (2009) (excepting capital felonies from application of the Criminal Punishment Code).
Similarly, we are unimpressed with the defense’s reliance on its serendipitous discovery on appeal that an earlier draft of section 948.06 contained a specific reference to the code which was omitted in the final version. We need not adopt any general view of the value of legislative history to observe that (a) the reason for the omission was very likely the neutral one of simply eliminating a redundancy; and (b) even taken at its best for purposes of the defense argument the elimination of the clause is no more than a drop in its bucket of argument which is drowned by the torrent of contrary legislative intent upon which we rely. See also Polite v. State, 973 So.2d 1107 (Fla.2007) (stating that fact that section 784.07(2), forbidding battery on a law enforcement officer, does not specifically provide that the defendant have knowledge of the officer’s status does not militate against ruling that such knowledge is required, even though similar statutes do contain' that language); Cooper v. State, 742 So.2d 855 (Fla. 1st DCA 1999) (holding that section 843.02, forbidding resisting an officer without violence, requires proof of the defendant's knowledge of the officer’s status despite statute’s silence as to such knowledge).

. Thus, under the ruling below, the legislative mountain, having labored, has brought forth a hole in the ground.