**Marcus L. BARBER, Appellant,**

v.

**STATE of Florida, Appellee.**

**Case No. 5D15–3865**

District Court of Appeal of Florida, Fifth District.

Opinion filed December 30, 2016

to present sufficient evidence to support a conviction.

James S. Purdy, Public Defender, and Noel A. Pelella, Assistant Public Defender, Daytona Beach, for Appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Deborah A. Cheesman, Assistant Attorney General, Daytona Beach, for Appellee.

SAWAYA, J.

We are confronted in this appeal with the statutory intricacies of revocation of probation proceedings involving an individual, Marcus Leon Barber, who qualifies as a violent felony offender of special concern under section 948.06, Florida Statutes (2015). This statute requires that, if an individual meets the requirements for that designation, the trial court must make written findings as to whether the individual is a danger to the community. See § 948.06(8)(e)1., Fla. Stat. (2015). The trial court failed to make the required written findings, and we must determine the proper remedy for that statutory noncompliance. Barber contends we should: 1) strike his designation as a violent felony offender of special concern; 2) vacate his prison sentence; and 3) remand this case for the trial court to reinstate his probation. We will discuss each proposed remedy in the order presented. We will also address Barber's argument that the State failed to prove that he is a danger under the statute. As a prelude, we will discuss the factual and procedural background of this case.

Barber was originally convicted of felony child neglect (a third-degree felony); fleeing or attempting to elude at high speed (a second-degree felony); and driving while license is suspended or revoked (a first-degree misdemeanor). For these crimes,

Barber was sentenced to serve two years in prison followed by one year of probation. Upon his release from confinement, Barber violated his probation when he traveled to Georgia without permission and was arrested for driving under the influence of alcohol. His probation was reinstated and extended to five years. Barber again violated his probation by committing a new law violation, and another order of violation was entered. In this latest iteration, the trial court revoked Barber's probation and imposed a concurrent prison sentence of five years for the child neglect offense and ten years for the fleeing and eluding offense.

Barber filed a motion to correct sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(b), arguing that he was sentenced as a violent felony offender of special concern but the trial court failed to include written findings regarding whether he was or was not a danger to the community. It is undisputed that Barber qualifies as a violent felony offender of special concern under sections 948.06(8)(b)-(c). Not only did Barber concede in the trial court that he qualifies for that designation, he also makes that concession in his briefs. We note parenthetically that Barber qualifies because of a prior robbery conviction that places him in the category of qualifiers under sections 948.06(8)(b)2. and 948.06(8)(c)6.

The trial court held a hearing that resulted in a written order entitled "Order On Defendant's Motion To Correct Sentencing Errors," which fails to include written findings under section 948.06(8)(e). Instead, the order contains a tersely worded statement that Barber "meets with qualifications for a Violent Felony Offender of Special Concern as a result of the prior robbery conviction." The only oral pronouncement the trial court ever made regarding findings under section 948.06(8)(e) was its statement at the conclusion of the hearing that "I do have to make—write up some written findings one way or the other." Despite the trial court's acknowledgement that written findings were necessary, none were provided.

Barber appeals his sentence, contending that the trial court erred in failing to provide written findings at the time of sentencing and when it subsequently failed to correct the error in the rule 3.800(b) proceeding. He argues that the proper remedies to correct this error are those previously listed. We disagree. Although this noncompliance is unacceptable, under the circumstances of this case, Barber's proposed remedies are also unacceptable. Analysis of the pertinent statutory provisions reveals why we have come to that conclusion.

Section 948.06 is an integral part of the Anti–Murder Act ("the Act") enacted in 2007 as chapter 2007–2, Section 5, Laws of Florida. The moniker conceals a broader purpose that stretches beyond protection against murder, although that is certainly an intended goal. The Act sweeps a wider path by enactment of provisions in section 948.06 that require an individual qualifying as a violent felony offender of special concern to be denied pretrial release when accused of violations of nonmonetary conditions of probation. The statute also requires imposition of mandatory incarceration in certain circumstances "to obviate the thought-to-be undesirable spectacle of a person on probation for a designated serious crime violating that trust only to be restored to the same or equivalent status." State v. Martinez, 103 So.3d 1013, 1016 (Fla. 3d DCA 2012). Compliance with these statutory requirements ensures that the community is protected from further criminal conduct, including murder, by those individuals designated violent felony offenders of special concern

until their hearings or until those designated violators, who are found to pose a danger to the community, are released from prison.

■ For purposes of our discussion, section 948.06(8) can be analyzed in two parts. The first part deals with provisions that pertain to the requirements that must be met to qualify a person as a violent felony offender of special concern, which include provisions for pretrial detention for those who qualify. See § 948.06(8)(b)-(d), Fla. Stat. (2015); see also Fla. R. Crim. P. 3.790(b)(3)(A). The second part deals with sentencing of individuals who are found by the trial court to be in violation of a non-monetary condition and who are violent felony offenders of special concern found to pose a danger to the community. See § 948.06(8)(e), Fla. Stat. (2015); see also Fla. R. Crim. P. 3.790(b)(3)(B). The designation under the first part of the statute does not depend on findings that the individual poses a danger to the community. However, for sentencing purposes under the second part of the statute, the designation under the first part is a necessary ingredient. Hence, the designation under the first part is applicable and has significance in the pretrial context before the case progresses to sentencing. If the defendant is found to be a danger to the community, that finding results in the designation under the second part of the statute. If not, there is nothing in the statute to indicate that the designation under the first part must be eliminated. Accordingly, we reject the notion espoused by Barber that noncompliance with the written findings necessary for sentencing purposes requires that the designation under the first part of the statute be stricken.

Barber's reliance on Bailey v. State, 136 So.3d 617 (Fla. 2d DCA 2013), is misplaced, so that decision is of no benefit to him. In Bailey, the court was concerned with the sufficiency of the written findings filed by the trial court to support its conclusion that the defendant qualified as a violent felony offender of special concern who posed a danger to the community under section 948.06(8)(e). Id. at 620–21. The court noted that the defendant did not contest the fact that he qualified for designation under sections 948.06(b)-(d). Id. at 619. The court held that, because the written findings were insufficient for the designation under section 948.06(8)(e), the designation must be stricken. Id. at 620–21. There is nothing in the opinion indicating that the court meant to strike the designation under sections 948.06(8)(b)-(d).

■ Barber contends that noncompliance with the written findings requirement necessitates vacating his prison sentence and reinstatement of his probation. The State argues that the lack of written findings is inconsequential and of no importance because the sentence imposed is a legal sentence with or without a finding of dangerousness. Therefore, the State argues, nothing further needs to be done, remand to the trial court is not necessary, and affirmance of the designation and sentence is appropriate. This argument is founded on the provision of the statute that states if the court decides to revoke probation, it "may impose any sentence that it could have imposed at the time the offender was placed on probation or community control." § 948.012(2)(b), Fla. Stat. (2015). The trial court found that Barber was in violation of non-monetary conditions of his probation, revoked his probation, and imposed a guidelines sentence of imprisonment. The sentence imposed would be a proper sentence if Barber was found to be a danger to the community because he received a guidelines prison sentence and he was not placed back on probation. Barber's sentence would also be proper if he was not found to be a danger to the

community because the trial court had the discretion to impose any sentence it could originally have imposed when Barber was first sentenced for his crimes. Thus, the sentence legally fits, regardless of Barber's dangerousness. The State therefore suggests that despite the absence of written findings, nothing more than affirmance is required under these circumstances.

 While we agree that the sentence imposed would be legal irrespective of the findings made pursuant to section 948.06(8)(e), we reject the argument that written findings are not necessary. The statute specifically provides that "the court shall" make written findings if the court determines that a violent felony offender of special concern has committed a violation of probation. § 948.06(8)(e), Fla. Stat. (2015). When the word "shall" is used in a statute, it generally requires mandatory compliance. See DeGregorio v. Balkwill, 853 So.2d 371, 374 (Fla. 2003). "Only when a particular provision relates to some immaterial matter, where compliance is a matter of convenience rather than substance, or where the statute's directions are given merely with a view to the proper, orderly and prompt conduct of business is the provision generally regarded as directory." Id. The written findings are substantive provisions that are required in order to impose a prison sentence for certain probation violators for the protection of the public. We do not believe that they relate to an immaterial matter; and we do not believe that compliance is a matter of convenience, promptness, or court orderliness. Moreover, there are no provisions in the statute that make an exception for cases where the prison sentence is appropriate regardless of whether the defendant is or is not a danger. To read the statute in the manner ascribed by the State would essentially render the written findings requirement meaningless in certain circumstances that are not delineated in the statutory provisions. See Unruh v. State, 669 So.2d 242, 245 (Fla. 1996) ("As a fundamental rule of statutory interpretation, 'courts should avoid readings that would render part of a statute meaningless.' "). We conclude that the written findings requirement of section 948.06(8)(e) is mandatory, not discretionary.

 Barber advances the argument that the State failed to meet its burden of establishing that he is a danger to the community and that after two hearings (the sentencing hearing and the rule 3.800(b) hearing), it is not entitled to another. The State takes a lackadaisical approach to this issue and does not address it in its brief. The premise of the argument is that the State declined to cross-examine Barber's two witnesses (Barber and his mother) or produce specific evidence of Barber's dangerousness at sentencing or during the hearing on the motion to correct sentencing error. Barber's mother testified during the motion hearing that her son would not be a danger to the community, and Barber essentially parroted that opinion in his testimony. The State's declination leads Barber to conclude that this unrebutted testimony is conclusive proof that he is not a danger to the community. We agree that the State bears the burden of establishing that a defendant qualifies as a violent felony offender of special concern who poses a danger to the community. See Alcantara v. State, 39 So.3d 535, 537 (Fla. 5th DCA 2010). However, we disagree that the State's reticence regarding the testimony of Barber and his mother establishes conclusive proof that Barber is not dangerous.

The statute provides that there are a number of factors the trial court should consider in making the dangerousness determination, and that decision must be based on one or more of them.

§ 948.06(8)(e)1.a.-e., Fla. Stat. (2015). The testimony presented by Barber and his mother would fit within the category of "[a]ny other facts the court considers relevant." § 948.06(8)(e)1.e., Fla. Stat. (2015). While this opinion evidence is certainly relevant, it would be up to the trial court to determine its credibility and weight in arriving at a final conclusion. However, that evidence is not exclusive and does not preclude consideration of the other categories of evidence listed in the statute.

Based on our analysis of the pertinent statutory provisions just discussed, we believe that the proper remedy is to reverse the sentencing order and remand for another sentencing hearing with directions that the trial court make the necessary written findings under section 948.06(8)(e) when imposing its sentence. See Singh v. State, 135 So.3d 1136, 1136–37 (Fla. 5th DCA 2014) (footnote omitted).

REVERSED and REMANDED.

LAWSON, C.J., and EVANDER, J., concur.